## RICHARDS v. RICHARDS.

(No. 965; Decided January 30, 1920; 186 Pac. 1107.)

Appeal and Error—Accounting—Findings' on Conflicting Evi-
dence Not Disturbed—Evidence of Partnership—Partnership—
Answers to Interrogatories—Pleading—Amendment After Evi-
dence is Not Allowed Except to Conform to Facts Proven.

1.  Findings of the trial Court upon conflicting evidence, in a
    suit by a partner for an accounting, to the effect that a
    co-partnership exists between plaintiff and defendants and
    that defendants claim that the money furnished by plain-
    tiff was a mere loan to them was not sustained by the
    evidence, will not be disturbed on appeal.

2.  Where answers. to interrogatories were not offered in evi-
    dence by either party, and defendants testified to the
    same matters while on the stand, any error in the order
    requiring defendants to answer such interrogatories, at-
    tached to the reply, was harmless to them.

3.  Refusal of the trial court to allow defendants to amend
    their answers after the evidence had all been introduced

was properly refused, for such proposed amendment would not conform to the proof as found by the Court from the evidence.

ERROR to the District Court, Carbon County; HON. V. J. TIDBALL, Judge.

Suit by Chris C. Richards against John W. Richards and others for the dissolution of a co-partnership, a determination of the interests of the respective partners and an accounting. There was a decree for plaintiff and defendants bring error.

*N. R. Greenfield* and *A. McMicken,* for plaintiffs in error.

The court erred in overruling defendant's demurrer to interrogatories attached to the reply; said interrogatoies were improper under the statutes (4419, 4420 C. S., 14 Cyc. 342; Chapman v. Cree, 45 O. St. 357; Mulhern v. Gove, 70 N. W. 15; Telephone Co. v. Eureka, 122 Fed. 960). The court erred in refusing defendants leave to amend their answers to meet amendatory matter in the petition (4437, 4438 C. S.; Cartwright v. Ruffin, 43 Colo. 377, 96 Pac. 261; 31 Cyc. 459; Stand. Ency. Proc. vol. 1, p. 627). In determining whether a partnership exists, the courts have adopted five general tests: 1. In determining whether the relation is one of partnership, the intention of the parties governs. 2. Mutual agency is a test of intention to form a partnership. 3. The right of control over property or over profits with power of disposition. 4. Whether there was mutual assent. 5. Community of interests. The evidence in the present case does not measure up to the above named tests (Channel v. Fassett, 16 O. 169; 30 Cyc. 357; Watson v. Bayliss, 71 Wash. 489, 128 Pac. 1061; Holgate v. Doner, 8 Wyo. 344); defendants in error having failed to establish an express agreement of partnership, urged that partnership might be implied from the conduct of the parties; one cannot recover on an implied agreement where he alleges an express agreement (11 Stand. Proc. 1041, and cases cited; 22 Ency. Pl. & Prac. 580; Cremer v. Miller, 56 Minn. 52; 57 N. W. 318); the evidence was insufficient to establish a partner-

ship (Bennett v. Bennett, 163 Pac. 814; Donahue v. Heni-ghen, 147 N. W. 464; Brown v. Houchin, 133 S. W. 680 (Mo.); Spurlock v. Wilson, 142 S. W. 363 (Mo.); Sawyer v. Burris, 121 S. W. 321 (Mo.); Chapin v. Cherry, 147 S. W. 1084 (Mo.); Denney v. Brown, 193 S. W. 552 (Mo.); Crawford v. Wiedeman, 166 S. W. 595 (Ky.); Reynolds v. Jackson, 26 Cal. App. 490, 144 Pac. 305; Miller v. Baker, 140 N. W. 407; Brown v. Brown, 141 N. W. 553; Miller v. Casye, 142 N. W. 589; Johnson v. Hohn, 162 N. W. 679; Colier v. DeJernett, 56 So. 101; Balles v. O'Brien, 59 So. 133; Haswell v. Standring, 132 N. W. 417 (Ia.); Shendan v. Reese, 48 So. 443 (La.); Weisse v. Hamilton, 105 Pac. 74 (Mont.); Mancuse v. Rasso, 116 N. W. 679 (Neb.); Hoffecker v. Austin, 81 Atl. 864 (N. J.). When the facts are ascertained the intention to form a partnership becomes a question of law (Nelms v. McGraw, 93 Ala. 245; Moore v. Smith, 19 Ala. 774; Fall v. McRae, 36 Ala. 61; Oliver v. Gray, 4 Ark. 425; Hazzard v. Hazzard, Fed. case No. 6279 (15 Tory 371); Smith v. Knight, 71 Ill. 148; Macey v. Combs, 15 Ind. 469; Loomis v. Marshall, 12 Con. R. 69; Kellogg Newspaper Co. v. Farrell, 88 Mo. 594). Mutual agency as a test of co-partnership (Story on Part., sec. 1, p. 208; Eastman v. Clark, 33 N. H. 376; Walker v. Clark, 8 Ia. 474; Davis v. Richardson, 45 Miss. 499; Harvey v. Childs, 29 Ohio St. 319; Babcock v. Stewart, 58 Pa. 179, 20 Cyc. 446; Croswell v. Lehman, 54 Ala. 363). Right of control over the property of profits with power to dispose of assets, management, etc. (Dwinel v. Stone, 30 Me. 384; Bradley v. Goddard, 49 Me. 115; Thord v. Marsh, 40 Miss. 158; Donnel v. Harsh, 67 Mo. 170; Musser v. Brink, 68 Mo. 242; Conklin v. Barton, 43 Barb. 435; Voorhees v. Jones, 29 N. J. L. 270; Kellog v. Griswold, 12 Vt. 291; Holgate v. Downer, 8 Wyo. 344). Community of interest of co-partners (Bradley v. Ely, 24 Ind. App. 2; S. C. 56 N. E. 44; S. C. 79 Am. St. Rep. 251; Roper v. Schaefer, 35 Mo. App. 20). The findings of the trial court as to the respective interests of the parties is not sustained by the evidence; there was error in ordering an accounting.

*L. E. Armstrong, Brimmer & Brimmer,* and *N. E. Corthell,* for defendant in error.

The case turned in the trial court upon the question of whether the co-partnership was confined to John and Fred Richards, or also included Chris; there was a conflict of evidence and the trial court found in favor of plaintiff below; it is submitted that a partnership existed and the finding that there should be an accounting is amply sustained by the evidence; this finding will not be disturbed if there was evidence to sustain it (Ketcham v. Davis, 3 Wyo. 164, 167; Columbia C. M. Co. v. Dutchess M. M. & S. Co., 13 Wyo. 244, 256; Slothower v. Hunter, 15 Wyo. 189, 204; Riordan v. Horton, 16 Wyo. 362, 374; Yount v. Strickland, 17 Wyo. 526, 534; City of Rawlins v. Murphy, 19 Wyo. 238, 252; Saratoga Land & Inv. Co. v. Jensen, 20 Wyo. 323; Stockgrowers' Bank v. Gray, 24 Wyo. 18, 40; Hunt v. City of Laramie, 181 Pac. 137, 139). It is needless to enter into a discussion of the legal elements and tests of partnership; a partnership agreement may be written or oral; the intention of the parties governs (Bank v. Butler, 149 Ill. 575, 36 N. E. 1000; Bentley v. Brossard (Utah), 94 Pac. 736); an express agreement is not indispensable (Meehan v. Valentine, 145 U. S. 611); in the absence of an express agreement, partners will be held to share equally in profits and losses (Paul v. Cullum, 132 U. S. 539); but the mere sharing of profits does not create a partnership; an essential element is the obligation to share losses also (Haswell v. Standring, 132 N. W. 417); mutual agency, an assertion or a common control of partnership property are not elements or essentials of a co-partnership (22 Am. Ency. of Law 23); the fact that one partner did not take as active an interest as the other partners does not affect a right to share in the profits (Botsford v. Von Riper, 110 Pac. 705; Saunders v. McDonough, 67 So. 591); the name under which the partnership is carried on is not important, they may use any name they choose (Painter v. Stahley, 15 Wyo. 510, 520; Crable v. O'Connor, 21 Wyo. 460). The law regards the conduct rather than the words of the parties in determining whether there is a

partnership (30 Cyc. 352, 353; Sullivan v. Sullivan, 122 Wis. 326, 99 N. W. 1022; Niroad v. Farnell (Cal.), 106 Pac. 252-253; Mendonca v. Russels (Ok.), 150 Pac. 1061-1062; Bartell v. Smith (Wis), 129 N. W. 782-783; Shriver v. McCloud (Neb.), 30 N. W. 534, 535, 536; Reeves v. Jordan (Ala.), 72 S. 322). Where different persons unite their capital or efforts for a common purpose and disagree upon a division of the proceeds, the court should determine the dispute, irrespective of whether the investments are equal or unequal (Knapp v. Hanly, 10 Mo. App. 353, 83 S. W. 1005-1008; Wetmore v. Crouch (Mo.), 51 S. W. 738; Botsford v. Van Riper (Nev.), 110 Pac. 705; Saunders v. McDonough (Ala.), 67 S. 591-595; Lind v. Webber (Nev.), 134 Pac. 461-465; Rankin v. Block, 38 Minn. 650-658; Fountain v. Menard (Minn.), 55 N. W. 601; Harris v. Carter (Mass.), 17 N. E. 649); the findings of the court were favorable to the plaintiff; a litigant may require disclosures by annexing interrogatories to his pleading (4419 C. S., 6 En. Pl. & Pr. 758); but the questions must be directed to material facts (Robbins v. Co., 61 N. E. 265; Grebenstein v. Corp., 91 N. E. 411); the court erred in refusing defendants leave to amend their answer (Kuhn v. McKay, 7 Wyo. 42; C. B. & Q. R. R. Co. v. Pollock, 16 Wyo. 321).

BEARD, CHIEF JUSTICE.

The defendant in error, Chris C. Richards, brought suit in the District Court of Carbon County against the defendants in error, John W., and Fred R. Richards, and Charles Travis. The petition is too lengthy to be here set out, but the substance of the averments thereof which are necessary to present the questions in the case here are that, about April 28, 1900, the three Richards entered into an agreement to become partners in the sheep, livestock and ranch business, under the firm name of Richards Bros., each paying into the partnership account the sum of $500.00, and were to be equal partners in said business, John W. and Fred R. to devote their entire time to the firm business, and Chris

C. to devote such time to it as his other labors would allow. That about Nov. 1, 1900, said Travis became a member of said firm, investing the sum of $800.00. That in the fall of the year 1907, the members of the firm attempted to state the amount of their respective contributions to the capital of said firm in the following amounts, to-wit: John W. Richards, $5,300.00; Fred R. Richards, $1,000.00; Charles Travis, $800.00, and Chris C. Richards, $836.00. That by mistake the amount thus stated as contributed by John W. was overstated in the sum of $2,000.00. That the business was continued under the readjustment of the respective interests until the commencement of the action August 4, 1915. By amendment made during the trial or at the close of the evidence, plaintiff alleged that said Travis some time during 1915 sold his interest in said business and retired from said firm, receiving payment therefor in part from the funds of the firm and in part by a note signed by Richards Bros. He prayed for a dissolution of the firm, a determination of the interest of the respective partners, an accounting, &c.

The defendants below filed separate answers, the answers of John W. and Fred R. Richards being identical, and specifically denied the allegations of the petition except that they admitted that the firm of Richards Bros. existed and alleged that it was composed of themselves only. Alleged that the plaintiff below, Chris C. Richards, loaned to said firm the sum of $836.00, which had been fully paid.

By reply plaintiff denied that he loaned the firm the money as alleged or that it had been repaid.

The defendant Charles Travis answered, denying that at the date of his answer, February 19, 1916, he had any interest in the firm of Richards Bros., and averred that for a long period of time he was interested in said partnership, having invested the sum of $800.00 in said company in November, 1900; that the exact interest in percentage in said business which was held by him was unknown to him; that on November 17, 1915, he sold all of his interest in said company to John W. Richards and Fred R. Richards,

and received payment for said interest from them. To his answer there does not seem to have been any pleading filed.

On the trial, the court found generally in favor of the plaintiff Chris C. Richards, and against the defendants, John W. Richards and Fred R. Richards, and that those three parties on or about April 28, 1900, entered into a co-partnership and as such engaged in the sheep, livestock and ranching business. That about November 10, 1900, defendant, Charles Travis, was admitted as a co-partner in said business; that the co-partnership so continued until about December 1, 1915, when Travis retired from the firm and received from the remaining co-partners full compensation for his interest therein; that the co-patnership con-. sisting of the three Richards thereafter continued and is still in existence. That it was agreed between the plaintiff and the defendants, John W. and Fred R. Richards, that their respective interests in said co-partnership should be in proportion to the amounts of money and time by them respectively contributed thereto. Found that the interest of the plaintiff, Chris C. Richards, was 12½ per cent of the total thereof, and that of said defendants 87½ per cent. That no specific period was agreed upon for the existence or continuance of said co-partnership; that plaintiff was entitled to have the co-partnership dissolved, its affairs wound up and its net assets, after the payment of its debts, distributed among the co-partners in proportion to their respective interests as aforesaid. An interlocutory decree was entered accordingly, and a special master appointed to take an accounting of the assets and liabilities of the co-partnership and report to the court. From that decree the defendants, John W. and Fred R. Richards, bring the case here by proceedings in error.

Counsel for plaintiffs in error state the issues in the case in their brief as follows: "The questions to be determined in this proceeding are: 1. Is there a partnership existing between the plaintiff and the defendants, Richards? 2. If such partnership exists, what are the respective interests of

the partners?" It is the contention of plaintiffs in error that the finding of the court on neither of those questions is sustained by sufficient evidence. The evidence is voluminous and conflicting and it would be a useless task to attempt to review it at length here. There was no written agreement between the parties, and whether or not a partnership exists between them must be determined from their conflicting testimony as to their agreement and their subsequent conduct. The parties are brothers, and the testimony of Chris C. is to the effect that in April, 1900, the three agreed to engage in the sheep business, each to contribute to the capital of the firm, John W. and Fred R. to devote their entire time to the business, and he to devote such time as his other work would permit, and that they were to share in the business in proportion to the amount of capital invested and time employed in the business by each of the partners. That at the start he furnished $500.00, and various other sums thereafter, which were used in the business, and devoted considerable time in the conduct of its affairs. The contention of the defendants, John W. and Fred R. Richards, is that there was no agreement of partnership except between themselves and that whatever money was furnished by Chris C. was simply loaned to them, for the use of which they were to pay the usual rate of interest, and more if the business was prosperous and they could afford to do so. Their testimony is to that effect, although their recollections of what was said and done appear to be quite dim. A certain book of accounts, admitted to have been kept by John W., is in evidence, in which the first entry therein is as follows: "1900, Apr. 28, J. W., F. R. & C. C. Richards Bot of Cosgriff Bros. 500 ewes @ $4.65 per head, $2,325.00. Share as follows:

| | |
|---|---|
| C. C. Richards | $500.00 |
| F. R. Richards | 912.50 |
| J. W. Richards | 912.50" |

Then follows several pages of personal accounts of the parties and an expense account. On page 70 of said book the following entry appears:

"Hanna, Wyo., Nov. 1st, 1900.

Charles Travis, C. C. Richards, J. W. Richards, and F. R. Richards have this 10th day of November, 1900, engaged in the sheep business under the name of Richards Bros., with amounts invested as follows:

| | |
|---|---|
| Chas. Travis | $ 800.00 |
| C. C. Richards | 742.66 |
| J. W. Richards | 2,769.12 |
| F. R. Richards | 2,769.12 |
| | $7,080.90" |

Follows by accounts headed "Richard Bros.", in which name the business has since been conducted. Travis is a brother-in-law of the Richards. No note or other evidence of indebtedness was given to either him or plaintiff for the money furnished by them. Travis testified that in November, 1900, he put $800.00 into the business and was to draw his portions of the dividends, up until 1907, when he and John W. had a verbal agreement that he was to get $200.00 a year on his investment. It appears he retired from the firm in 1915, his interest being paid for out of the funds of Richards Bros. Dec. 1, 1907, a set of books of the firm of Richards Bros. was opened containing a list of the resources and liabilities of the firm, in which plaintiff is credited with investments to the amount of $820.00. By the monthly trial balances from January 1, 1908, to and including July 1, 1916, the stock account of the respective parties, with the exception of one month, is entered as follows: J. W. Richards, $5,300.00; F. R. Richards, $1,000.00, and C. C. Richards, $836.00. The personal accounts of the parties also appear in the books. These books were opened by plaintiff. That is, he did the clerical work. The defendants testifying that they did not know from what source he got the figures; that they gave him very little information or assistance. Thereafter for part of the time the books were kept by plaintiff and for part of the time by Fred R. Richards. In 1913 the parties attempted a settlement of their affairs in which it appears they figured plain-

tiff's interest at 15% compound interest on $500.00; but the settlement was not consummated, was disregarded by the parties and the business continued as before. In 1915, plaintiff was seeking a settlement of the company affairs, and the attorneys for the defendants, by their direction, wrote plaintiff a letter in which they state, "Your brothers have been to see us relative to the question of the settlement of your claim against their partnership. We have gone over the matter very thoroughly with them and have before us your various letters. We cannot see in any event how you can claim 15 per cent of the profits of the partnership, whatever they might be. According to the so-called trial balance of October 1st, 1914, which you refer to, the amount you contributed was only $836.00, which, according to the amounts the other brothers contributed, would be between 11 and 12 per cent, but as you say on one of your letters, the inventory, so-called, is antiquated." The letter then proceeds at length to state why certain property of the firm, particularly real estate, had not increased in value, and then proceeds: "In view of the fact that your two brothers have given their entire time and attention to this business and you have given little or nothing, your brothers thought it was proper and right that they should be allowed in any settlement, wages at the running rates for the work they have done, and as you have attended to the books at various times they were willing to allow you for whatever services you did, about $800.00, which seems to be extremely liberal. As it is impossible without a great deal of expense to get a true inventory and appraisement of the present values of all the property, they thought that it would be very equitable to offer you ten times the amount that you put in, or the amount of $8,360.00, as a settlement in full to be paid in this way" (stating terms of payment). "This seems to us to be a very liberal offer, in view of the fact that you have had from the proceeds of the business at various times $2,395.28, or nearly three times as much as you originally contributed." They then stated that the cash and notes had been sent to a bank with a release, and requested

him to call there, sign and return the release, and then proceeds: "Should you refuse to settle in this way, the only method by which an equitable arrangement could be arrived at *without litigation*, which, of course, would cost a good deal of money to both sides, besides ill-feeling, would be for you to appoint one party and your brothers another, and those two select a third, and go over all the property of the company and make a fair value of it, and then have the matter figured out on a pro rata basis, giving, of course, to your brothers proper allowance for their work in running the business, and you such as would be equitable for attending to the books at the times you did. You can understand that this would cost a considerable amount of money, as to get the proper men to make these valuations and go over all the property of the partnership at this time would take some time and they would have to be well paid, which, of course, would have to come out of the partnership assets and leave that much less for your share."

The business of the firm was conducted by the defendants and when money was borrowed on its account the notes were signed "Richard Bros. J. W. Richards, F. R. Richards." And when written contracts were entered into they recited that Richard Bros. was a co-partnership composed of J. W. Richards and F. R. Richards, and their printed stationery contained the names of defendants only. There was also testimony of other parties that defendants had stated that plaintiff had an interest in the business. We have referred to so much of the evidence not only to disclose the conflict therein, but also to show that there was, in our judgment, ample evidence to support the finding of the trial court that a co-partnership exists between plaintiff and defendants, and that defendants' claim that the money furnished by plaintiff was a mere loan to them is not sustained. The court having found upon the whole evidence in favor of plaintiff on that issue, its finding should not be disturbed by this court.

On the other branch of the case—the interest of the respective partners—we think it impossible for any one to ar-

rive, to a mathematical certainty, at the interest of each, and perhaps no two persons would arrive at the same result from the evidence in the record in this case. Counsel for the respective parties practically agree that the amounts invested by each of the parties as shown by the books from time to time contain errors, and that the other evidence in the case must be considered in arriving at a just and approximately correct result. The figures furnished us by counsel for plaintiffs in error, and which they argue are supported by the evidence, would reduce plaintiff's interest to 9¼ per cent. On the other hand, counsel for defendant in error furnish us with figures, which they likewise contend are supported by the evidence, which would increase his interest to at least more than 16 per cent; and if error was committed by the trial court in its finding, it was against their client. We have given careful consideration to the entire evidence in the record and believe the court arrived at substantial justice between the parties on the evidence presented to it.

Objection is made to the order of the court requiring the defendants to answer certain interrogatories attached to the replies. The answers to those interrogatories were not offered in evidence by either party, and the defendants testified to the same matters while on the stand, and it has not been made to appear that they were prejudiced even if the ruling as to certain of the interrogatories was erroneous.

Error is also assigned in the ruling of the court in refusing to allow defendants to amend their answers after the evidence had all been introduced. Such amendment at that time would be proper only in order to have the pleadings conform to the proof and as the proposed amendment would not conform to the proof as found by the court from the evidence, the amendment was properly refused.

Upon the whole record we do not discover any such prejudicial error as will entitle plaintiffs in error to a reversal of the judgment, and it is, therefore, affirmed.

*Affirmed.*

POTTER, J., and ARNOLD, District Judge, concur.

HON. JOHN R. ARNOLD, Judge of the Third Judicial District, was called in and sat in place of Blydenburgh, J., who had announced his disqualification to sit·in the case.