PETER KAPERONIS et al., appellants, v. IOWA STATE HIGHWAY COMMISSION, appellee.

No. 50012.

(Reported in 104 N.W.2d 458)

August 2, 1960.

Whicher & Davis, of Sioux City, for appellants.

Gill & Dunkle, of Sioux City, for appellee.

Larson, C. J.—This is a third appeal by plaintiffs from district court awards as a result of proceedings by the Iowa State Highway Commission to condemn various parcels of real estate owned by them in Sioux City, Iowa. See Kaperonis v.

Iowa State Highway Commission, 251 Iowa 39, 99 N.W.2d 284, and Kaperonis v. Iowa State Highway Commission, 251 Iowa 415, 100 N.W.2d 901. The property involved was all in the same locality and was similar in nature and condition. Plaintiffs' contentions are practically the same, being premised upon the allegation that the trial court, sitting as a trier of fact, erred in failing to give value to the prospective use of this property for commercial and industrial purposes. In other words, while the words were changed, the tune remained the same. As in the former cases, we find no reversible error in these proceedings.

Involved in this taking were two lots, each 50 feet by 150 feet. On Lot 12, Block 17, were crowded a six-room frame house, two five-room frame houses, a single story frame store building unused since the flood of 1952, a ten-room frame house containing two apartments, and two small frame sheds. On Lot 1, Block 18, was a frame double garage, a sixteen-room frame house containing four apartments, and a frame three-plex house. Although both lots were on Leech Street, they did not adjoin. Wall Street divided them. While all buildings, except the garage and sheds, had sewer, water and electrical connections, with one exception, none had central heating, hot water or a bath. Generally, the condition of the structures was not good and they fit the description set out in the first of these cases where we said that, while there are no slums in Iowa, yet this property, "if located elsewhere, would not have been entirely out of place in such a district." Plaintiffs appear to recognize this fact and seem to rely principally upon the location of the lots for value. Their qualified valuation experts measured value of the lots upon a square-foot basis. Thus, we do not consider a detailed account of the condition of the buildings upon the lots would be justifiable or helpful to this opinion.

Mr. Kaperonis himself testified as to the rentals in the period before it became known the properties would be condemned. He gave the rentals for the years 1954, 1955 and 1956, as $2498.91, $1292.62, and $1272.46 respectively, and he explained the reduction in income as due to the rumored action of the Highway Commission.

Here, as in the previous cases, the defendant condemned the entire lots and took possession of them August 8, 1958. The Condemnation Commission awarded plaintiffs $16,200 and, upon appeal, the trial court, jury waived, raised the award to $21,165. Still dissatisfied, plaintiffs appeal to us. They assign as error (1) the court's refusal to take into consideration the prospective commercial and industrial value of the lots by reason of their location in a heavy industrial area; (2) the court's refusal to take into consideration the prospective commercial and industrial value of the lots by reason of their proximity to the Municipal Docks on the Missouri River. Considerable testimony was introduced and admitted without objection as to these alleged elements of value, and all but one or two of the well-qualified valuation witnesses testified that they gave consideration to those elements. As may be expected, some gave it great weight and others little or none in fixing their opinions of value as experts. When such disputes arise and there is competent and material evidence before the court, it is the trier of fact that usually determines the dispute. So it is here.

I. The court sat as the trier of the facts as well as of the law. Of course no authority need be cited to the effect that its findings have the effect of a special verdict. If it is supported by any substantial evidence, the finding is binding upon this court on appeal. Kaperonis v. Iowa State Highway Commission, 251 Iowa 39, 41, 99 N.W.2d 284, 285.

Referring to the trial court's findings of fact, the plaintiffs now contend it is apparent that the trial court refused to consider any element of value submitted relating to the location of the lots near the Municipal Docks and within the heavy industrial area. If by that contention they mean it refused to consider the evidence introduced, we cannot agree. Of course, if such evidence of value had been denied a jury, there may have been error, and no less if the court sitting as a trier of fact refused to consider it. It was competent, relative and material evidence, but the record does not bear out plaintiffs' contention in this regard.

The trial court heard Mr. John C. Kelly's testimony as to the past and anticipated use of the Missouri River for freight

traffic, and the testimony of all witnesses as to the distance from the lots involved to the Municipal Docks. Clearly the trial court heard the testimony concerning that element of value due to location as it related to the dock, heavy industry and to the rental residential area. Having so considered these elements, it could, as the fact finder, give to them such weight in fixing the final value as it felt the evidence required. It could give each element much, little or no value. We are satisfied that is what it did here, and of course we are not permitted to disturb such a finding of fact based on substantial and competent evidence.

In its findings of fact the court determined the average annual gross income from such property by rental was $1688 per year, that its use had been residential, but also explained that having "given consideration to the testimony offered by both parties concerning the location of this property with respect to the Missouri River and the Municipal Docks, and * * * concerning the use of the river for occasional shipments of freight", it found "this property has no special value attributable to its location with relation to the Municipal Docks * * *." It also found "that all of the expert witnesses testifying to value took into consideration the location of the property in an area zoned 'Heavy Industrial', and all of the defendant's witnesses considered it not alone as residential but as potentially industrial property, * * *."

With the possible exception of the witness Louis C. Burkle, all witnesses did state that they knew the lots were zoned "Heavy Industrial", and he stated he did not consider the property had any potential except as residential rental property. Under the record we are satisfied that all witnesses were aware of the present and past use of the lots as residential rental and of the claimed potential due to industry and commerce, and considered them in fixing values. It was entirely proper for each expert witness to state what he considered was the principal element of value, and to give little or no value to other elements.

Kaperonis testified as to rental income and location. He valued the property at $40,000. Ray Simeon and Walter Boyle,

valuation experts testifying for plaintiffs, gave the commercial and industrial value great weight and valued the property at $33,750 and $30,000 respectively. The defense expert witnesses fixed the value at $16,450, $17,000, $16,000, and $14,150. It also appeared no new industrial buildings had been erected in the locality in the past ten years, and the nearness of the Floyd River did pose a flood threat to the premises.

Plaintiffs contend that because defendant's witnesses Burkle and Gerald Martin based their valuation of the property on its use as residential income property only, it was valueless. Bert A. Stoneburg, they admit, did consider its value for industrial purposes. He said, "We allowed as much as we could for heavy industrial and other phases surrounding the property. Absolutely it was rental property, or residential, so we had to correlate that a little bit more strongly along those lines." "We", of course, related only to himself.

It is clear, then, that the trier of fact had before it the evidence, that none was stricken on plaintiffs' motion, and that it considered the various elements of value offered, as well as the testimony that some elements were of no value. In the previous Kaperonis cases we pointed out such evidence requires of the fact finder that it decide whether the property was adaptable for industrial use, or that, in so finding, such possible use would probably enhance its value.

We said in 251 Iowa, at page 44, 99 N.W.2d 284, at 287: "The proper submission of an issue to a jury generally means that there is a fact question to be determined, and that the jury may decide it either way." Here the issue was the value of the property on the day of taking, August 8, 1958. Ordinarily in such cases it is the damage due to the taking, but where all is taken, of course the reasonable market value of the property immediately before condemnation is the measure of this damage.

We are satisfied the trial court properly heard and considered the testimony as to the various elements of value, and did act within its fact-finding authority in making the award. It is sustained by substantial evidence.

II. Plaintiffs argue ingeniously that when the element of location has been proven, a value has been established as a

matter of law, and such value, whatever it may be, must be considered in arriving at the total damages for the taking of the condemned property. Thus they say here, as it has been established that the property was within the "Heavy Industrial" zone and was within three blocks of the Municipal Dock, that as a matter of law this element of value must be considered by the finder of fact in setting the final value, and that failure of the court to give it any value was reversible error.

It is perhaps true there is some language in Hall v. West Des Moines, 245 Iowa 458, 468, 62 N.W.2d 734, 740, and in Smith v. Hough, 251 Iowa 435, 100 N.W.2d 906, which might be construed as requiring as a matter of law that some value be placed upon an element proven without dispute, but that is not the intent of such language. It simply refers to the admissibility of such evidence. We have not required or permitted a separate item of damage be found for each element of value included in a condemnation award. The total damage suffered by the condemnee is allowed in a single jury award, and it is presumed all proper elements upon which evidence is accepted are evaluated and considered in that award. The fact that evidence was admitted, and properly so, on the commercial and industrial potential of this property does not compel the fact finder to place a value upon it. The trier of fact may reject such values as too remote or speculative to justify any increase in value due thereto.

It must be concluded that the admission of undisputed evidence as to the distance to the dock area and its hoped-for traffic, as well as the nearness of heavy industry and the zoning of the property as "Heavy Industrial", did not compel the trier of fact to give to those elements any value. Here the court was the jury in the sense that it was the trier of the facts. It accepted and considered evidence of the adaptability of the plaintiffs' condemned property for industrial and commercial use. It was free to find, as it apparently did, that the possibility of use for industrial or commercial river purposes was too remote and speculative to affect the value of the property involved. Nevertheless, it did increase the award by more than $5000, indicating, we think, a very fair and careful consideration of

all the elements of value submitted. Its findings having substantial support in the evidence, and there being no error, the judgment of the trial court is affirmed.—Affirmed.

GARFIELD, HAYS, THOMPSON, PETERSON, GARRETT, and THORNTON, JJ., concur.

OLIVER, J., not sitting.