OWEN CRIST and RUTH CRIST, appellees, v. IOWA STATE HIGH-
WAY COMMISSION, appellant.

No. 50830.

(Reported in 123 N.W.2d 424)

616

SEPTEMBER 17, 1963.

Evan Hultman, Attorney General, State of Iowa, C. J. Lyman, Special Assistant Attorney General, Iowa State Highway Commission, of Ames, and Keith E. McWilliams, of Des Moines, for appellant.

Steward, Crouch & Hopkins, of Des Moines, for appellees.

THOMPSON, J.—This case shows a familiar pattern: a condemnation proceeding instituted by the defendant, hereinafter referred to as the commission, against certain real estate owned by the plaintiffs; dissatisfaction of the plaintiffs with the allowance made by the condemnation commission and an appeal to the district court; a trial there which materially increased the award, and an appeal by the highway commission therefrom.

The plaintiffs' property condemned in this proceeding was a lot in the City of Des Moines. It is known in the record as S, or the subject property. It was jointly owned by the plaintiffs, and was taken in its entirety. Immediately to the west of this lot, but separated from it by an alley which is shown to have been closed, or impassable, were two other lots, owned by plaintiff Owen Crist individually. One of these, known as B, was improved with a building, or buildings, another lot, known as P, was separated from B by a space described in the record as "two doors" south of B. Owen Crist conducted a business known as

Owen Crist Auto Body Service, and in so doing used all three lots: B, P and S. In the area designated as B he did wreck rebuilding, in P he stored cars, and S was also used for storage. There is some indication that Owen Crist Auto Body Service was a corporation. It is not disputed that all three lots were used in conjunction with the business.

Lots B and P were also condemned by the commission, at the same time as the condemnation of S, but in separate proceedings. The appeal here is directly concerned only with S; but B and P are involved because the trial court permitted evidence of the value of S as used in connection with B and P to be considered, with other items of value. The point at issue is best shown by the court's Instruction No. 9, which we quote:

"Evidence has been admitted in this case showing without dispute that the property involved herein was just prior to the condemnation used in conjunction with certain other properties owned by the plaintiff Owen Crist not involved in this case. It is proper for you to consider this evidence and give such weight, and such weight only, along with all of the other evidence admitted in this case as bearing upon the fair and reasonable market value of the property involved herein as you feel it justly entitled to receive in the event and only in the event you find that such use would probably continue.

"Although certain evidence has been admitted in this case of the condemnation of certain other properties owned by the plaintiff Owen Crist upon October 14, 1959, marked as Area B and Area P on plaintiffs' Exhibit A, the damages, occasioned to the plaintiff Owen Crist by the condemnation of said other properties are not involved in this case and you may not make any allowance or addition of any sum of money arising therefrom as damages, for such other condemnations have been determined in other proceedings."

The defendant challenged the competence of the evidence of the use of S in conjunction with B and P as evidence of value, and requested an instruction which would have told the jury that the use of S in conjunction with B and P was not a proper element of value, and that it should not consider the testimony of certain value experts who had included such use in fixing

their estimates. So far as the court's instructions and those requested by the defendant are concerned, there is nothing for review on this appeal, because of the failure of the defendant to take proper exceptions as required by R. C. P. 196. However, the question was raised by objections to evidence and so we have it before us.

The defendant says in its brief: "The major error of the Trial Court in this case was permitting the Plaintiff-Appellee and the Plaintiff-Appellee's valuation witnesses to testify as to the fair and reasonable market value of the subject property as used in conjunction with the other property which the Plaintiff-Appellee, Owen Crist, owned individually."

We accept this as the major complaint of the defendant, and address ourselves to it first in this opinion.

I. The defendant urges that, since the ownership of B and P was not identical with that of S, it was compelled to condemn in separate proceedings. It cites Duggan v. State, 214 Iowa 230, 242 N.W. 98. There William and Mary Duggan, brother and sister, owned an eighty-acre tract across which the State condemned a right-of-way. Immediately adjacent on the west was another eighty acres owned by Mary Duggan individually. It was not touched by the right-of-way. But the trial court permitted the jury to treat the two tracts as one farm and measure the damages accordingly. We said this was not proper, and reversed. The effect of the trial court's ruling there was to allow the jury to award damages to the second tract, not directly affected by the condemnation and not in the same ownership as that from which the right-of-way was taken.

We may agree with this holding without in any manner affecting the trial court's rulings here. No damages to tracts B and P, or either of them, were considered or allowed. All that was done was to permit the use of S in connection with B and P to be shown, as affecting the reasonable market value of S. The jury was told that no damages to B and P should be allowed.

The commission also relies upon Hoeft v. State, 221 Iowa 694, 266 N.W. 571, 104 A. L. R. 1008. There the plaintiff owned two separate tracts, shown by the evidence to be used entirely separately; they were rented to and used by different tenants

for separate purposes and independent of each other. The condemnation was of a strip along the north end of both properties. We said that it was proper to permit the jury to consider the reasonable market value of each tract. The facts do not fit the case at bar, and the case is not in point.

Since the entire tract S was taken the measure of damages was its reasonable market value at the time of taking. Under these circumstances, we have said: "In this estimation the owner is entitled to have the jury informed of all the capabilities of the property, as to the business or use, if any, to which it has been devoted, and of any and every use to which it may reasonably be adapted or applied." Ranck v. City of Cedar Rapids, 134 Iowa 563, 565, 566, 111 N.W. 1027, 1028.

The Ranck case lays down broad general rules on the question of admissibility of evidence as to value. Other cases have dealt with the problem before us here more specifically. In Cutler v. State, 224 Iowa 686, 278 N.W. 327, there was involved a 240-acre farm from which the condemned land was taken, and an adjoining 80-acre tract owned in part by the owners of the 240 acres but with some diversity of ownership. The trial court instructed that the 80-acre tract was not a part of the farm to which damage could be attributed, but that the jury might take into consideration the advantage of using the two farms as one in fixing the value of the 240-acre tract before and after the condemned portion was taken from it. We held the giving of this instruction not prejudicial error.

In Nichols, Eminent Domain, Revised Third Ed., Volume 4, section 12.314, pages 159, 160, it is said: "Thus, where the adaptability for a specific use depends upon the land being used in combination with lands belonging to other persons, such use may be shown if the possibility of such combination is so great as to have a definite effect in enhancing the market value of the property." In 18 Am. Jur., Eminent Domain, section 245, page 883, the rule is thus stated: "Even though the increased market value is due to the adaptability of the property for valuable uses in conjunction with other properties, it may be considered, if the practicability of the combination of all necessary properties on which such availability depends is at the time of

the condemnation so great as probably to affect the public mind, and therefore increase the price which a purchaser might be expected to give." In the case at bar, we have not merely a probability of availability for use in connection with other properties, but the actual and undisputed fact of such use. See also City of New York v. Sage, 239 U. S. 57, 61, 36 S. Ct. 25, 26, 60 L. Ed. 143, 146; Emmons v. Utilities Power Co., 83 N. H. 181, 141 A. 65, 58 A. L. R. 788, 792; and United States v. 3,928.09 Acres of Land, 114 F. Supp. 719, 721, and authorities there cited.

It is interesting to note here that the subject tract, S, was zoned R-3, which means for residence purposes only; but that a permit for a nonconforming use to use S in connection with the properties, B and P, had been secured. The record also shows that a driveway had been built from the building on B to the subject lot, S, and S was used as an access area to the roof of the building, where cars were also stored.

It is true the other properties, B and P, were condemned at the same time as S, so that it is probable the use of S in conjunction with them would no longer be possible. But the value of condemned property is fixed as it existed at the time of the taking. Kaperonis v. Iowa State Highway Comm., 251 Iowa 1166, 1171, 104 N.W.2d 458, 461; Ranck v. City of Cedar Rapids, supra, loc. cit. 134 Iowa 565, 111 N.W. 1028. We must evaluate the property taken, with its potentialities and its highest and best reasonable uses, as it was immediately before the taking. We think the trial court properly ruled on the point in question.

It would be a palpable injustice to say that, although the condemned tract had as an important element of value its use in conjunction with other properties, a condemnor could, by condemning all of them at the same time, destroy this element. But this is what the defendant contends for here. We do not agree.

II. Error is assigned because the evidence of use in conjunction with other properties was admitted when such item of damage was not specifically set out in plaintiffs' petition. Code section 472.22, formerly section 7841-c1 of the Code of 1935, section 7841.1 of the Code of 1939, provides that the peti-

tion shall state specifically the items of damage and the amount thereof. But here the sole item of damage was the reasonable market value of the property taken. Evidence of other matters bearing on market value was proper; but these were not items of damage in themselves. The defendant cites Maxwell v. Iowa State Highway Comm., 223 Iowa 159, 161, 271 N.W. 883, 118 A. L. R. 862, in support of its contention at this point. As we read it, this case is squarely opposed to the claim made. There had been a former opinion in the same case, found in 265 N.W. 899, which was set aside on rehearing. But the second and final opinion in the case quoted with approval and followed the first holding on the point in question. It said: "As stated in the original opinion, 265 N.W. 899, loc. cit. 906: 'This language [of the statute referred to above] does not mean the amount of each specific item, but simply the total amount of the damages claimed by the plaintiff. * * * It certainly was not intended by the enactment of this section that the petition provided for should plead as separate issues each element of damage or depreciation claimed.' " There is no merit in the claim of error here.

III. The defendant was required to answer certain interrogatories, propounded by the plaintiffs, and he predicates error upon this ruling. The interrogatories, summarized, asked that the defendant state the number of appraisers employed by the commission to appraise the subject property; the names and addresses of such appraisers, and the names and addresses of each person from each firm who took part in the appraisal; the appraisal figures on the property by each firm; whether each appraisal firm submitted a written report, the name of the person signing said report, and the name and address of the individual connected with the commission who had possession of said report.

The defendant filed a resistance to these interrogatories. It asserted they were in violation of Rule of Civil Procedure 121; the plaintiffs were trying to determine the manner in which the defendant would present the reasonable market value of the property, and the manner in which it would establish its defense; the interrogatories were unnecessary for the plaintiffs

to prepare for trial; they would have all facts available without the interrogatories; the plaintiffs did not affirmatively state the information sought was necessary to adequately prepare for trial; and the plaintiffs had access to all the material facts in the case.

The trial court thought the resistance was not specific enough to raise any question, and denied it on the authority of Stover v. Central Broadcasting Co., 247 Iowa 1325, 1329, 78 N.W.2d 1, 3, 4, and for other reasons. Some distinction between the Stover case and the one now before us may be made. There the point was emphasized that the objections said "many" of the proposed interrogatories were improper for reasons stated, but there was no way for the court to determine which were included in the "many". In the instant case we think the defendant made it sufficiently specific that each objection was intended to apply to each and all of the proposed 22 interrogatories.

But we find no solace for the defendant in this. We do not find it necessary to determine whether its objections to the taking of the interrogatories were well founded. Its principal argument in this court is directed to the thought that the interrogatories ask for opinions rather than facts; and it is only facts that may be inquired into. Again, we do not decide whether the interrogatories asked sought to bring out facts, or opinions, or whether opinions, if such they were, might be inquired into. In Hot Spot Detector, Inc. v. Rolfes Electronics Corp., 251 Iowa 647, 657, 102 N.W.2d 354, 362, we quoted with approval this from 4 Moore's Federal Practice, Second Ed., section 33.17, page 2311: "In passing upon objections to interrogatories the question before the court should not be whether, as a theoretical matter, the interrogatory calls for an expression of opinion, but whether an answer would serve any substantial purpose."

Other objections were urged to the interrogatories. But we think the case here is governed by the rule laid down in 5A C. J. S., Appeal and Error, section 1698, pages 816, 818: "It may be stated as a general rule that harmless error with respect to depositions is not a ground for reversal. Accordingly, a reversal cannot be had for nonprejudicial error in * * * an order compelling, or refusing to compel, answers to interrogatories; * * *."

See also on this point Evans v. Johns Hopkins University, 224 Md. 234, 167 A.2d 591, 595; and Richards v. Richards, 26 Wyo. 421, 186 P. 1107, 1110. Indeed, the rule is but a specific application of the thoroughly established principle that nonprejudicial error is never ground for reversal in an appellate court.

We have set out above the nature of the interrogatories. Whether the interrogatories and answers were admitted in evidence is not entirely clear, but as we read the record they were excluded. At the close of their case, the plaintiffs asked to read certain interrogatories into evidence, objection was made, and no ruling appears. However, the record does not show that any were read, and immediately following the court noted that plaintiffs' Exhibits A and B (neither of which was an interrogatory) had been admitted and received, with certain exhibits of the defendants. This seems to exclude the interrogatories.

But again we think, if they had been admitted, error, if such there was, was harmless. The interrogatories concerning the appraisals made by the defendant-commission, with the exception of that of the American Appraisal Company, were in line with the contention of the defendant, and the values testified to by its witnesses, and tended to aid rather than harm it. The record also shows without contradiction that the plaintiffs had knowledge of the appraisal made by American, and its amount, before the interrogatories were propounded. They were informed of this by a representative of the commission. With this knowledge, what value the interrogatories were to them, or what injury was done to the defendant, is not apparent. Nothing in the interrogatories, as answered, harmed the defendant except the valuation of American; and this was already known to the plaintiffs.

Armed with this knowledge, they procured the deposition of the representative of American who made the appraisal, one Miller. The propriety and admissibility of this deposition is discussed and upheld in another division of this opinion.

The record before us shows no prejudicial error in the court's ruling requiring answers to the interrogatories.

IV. Further error is assigned upon the admission into evidence of the testimony, by deposition, of the plaintiffs' witness

Robert L. Miller, an employee of the American Appraisal Company, of Milwaukee, Wisconsin. It appeared that this witness had made an appraisal of the subject property, as a representative of his company, at the request of the defendant-commission, and he or his company had been paid therefor by the commission. He testified that, as indicated in the appraisal report, the reasonable market value of the property was $18,500. The testimony was in all probability damaging to the defendant, because it was much in excess of the values placed on the property by its other valuation experts; in fact, the plaintiffs' amended petition alleged the value to be only $18,000. It was also much more than the award of the condemnation commission, stated in the defendant's brief as $3900. The jury's trial award was $11,300.

When application to take Miller's deposition was made, the defendant objected, on the grounds that the appraisal was made for the commission and was privileged; and the appraisal was secured to enable the defendant to prepare for trial. The objections were denied. On the trial, further objection was made that it appeared the witness had considered the use of the property in conjunction with the other two lots lying nearby, owned and used by plaintiff Owen Crist individually. We have discussed and determined this latter objection in Division I above, and so give it no further attention here.

On the day of the commencement of the trial, a motion to suppress the deposition was filed, setting up the same and perhaps other grounds. However, resistance was lodged to this by the plaintiffs, in part upon the ground that the motion was not timely. The deposition had been on file for several months, and the trial court agreed that the motion to suppress came too late and it was not in the interest of justice to permit its filing on the day of trial. The trial court had discretion in the matter, and we find no abuse.

We turn then to the remaining objection, that the appraisal was a privileged communication. Clearly it is not such within the meaning of our statute, section 622.10, which refers to and defines communications made in professional confidence; nor does it come within any of the special situations barring some communications or disclosures as defined by other special

statutes. In fact, in this court the defendant does not so claim. It stresses in argument that because the appraisal was made for and paid for by it, the witness should not have been permitted to testify as to the value placed on the property. Whether the objection of privilege made in the lower court is sufficient to cover the contention now made is doubtful. However, we shall consider it sufficient to raise the question, for the purpose of this discussion.

There is a division in the authorities on the question posed by the defendant here. See annotation, Compelling Expert to Testify, 77 A. L. R.2d, section 3, pages 1191–1194 inc. We conclude that at least under the situation here the better rule is that the expert's testimony is available to the opposing side. The cases which hold to the contrary say that it is unfair to permit a litigant to secure and use in evidence the opinion or appraisal made and paid for by his adversary. It is proper to observe that we are not here dealing with the case of the expert who refuses to testify for the opposing side; Miller made no objection to giving his deposition.

Rule of Civil Procedure 140 provides that, subject to the restrictions in the following rule 141, the deposition of any person, *including a party*, may be taken. Rule 141 sets out a number of restrictions, none of which touch the present situation. Rule 143 says that "the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party * * *."

The discovery rules are to be liberally interpreted. Nehring v. Smith, 243 Iowa 225, 228, 49 N.W.2d 831, 833; Hitchcock v. Ginsberg, 240 Iowa 678, 679, 37 N.W.2d 302, 303 ("The modern trend has been to broaden the scope of discovery to give litigants access to all the material facts.")

It seems, also, that if one may take the deposition of an adverse party he should also be permitted to take the deposition of an expert retained by the opposing party, if no question of privilege or other matter barred by rule 141, supra, intervenes.

There is, at first impression, a seeming unfairness in

permitting a litigant to secure the opinion of an expert who has been employed and paid by his opponent. We conclude, however, that this is more apparent than real, when applied to the present situation. We must remember that the defendant here is a public body charged with two public responsibilities. It must represent the State of Iowa in building and maintaining its highways; and this throws upon it the burden of procuring rights-of-way for the many roads that must be constructed. Here one of its responsibilities is to see that the necessary realty is obtained at a price fair to the taxpaying public. But it must also keep in mind its duty to the individual citizen whose property is taken. He is entitled to be fairly compensated; and it is no part of the duty of the commission to attempt to procure his property for less than its reasonable value. On the contrary, it must at all times be as fair to the individual citizen as to the public. Of course differences of opinion will arise and litigation will ensue.

But we see no reason why it is unfair to the commission if the condemnee whose property is being taken uses the opinion of an expert employed by the commission and paid with public funds for his appraisal. It is only in the exceptional case that the property owner will desire to use such an appraisal; but, in the rare case where the expert places a value on the property which sustains the owner rather than the commission, we know of no reason in fairness why the commission should object that this be made known. Its duty to see that the condemnee is fairly paid for his land removes any element of unfairness which might obtain in a similar controversy between private parties.

Support for our position is found in Sachs v. Aluminum Company of America, C. C. A., 6th Cir., 167 F.2d 570, 571, which holds that an X-ray metallography expert who had been employed by the opposing litigant might be called and compelled to testify, saying: "The primary concern of courts of justice is to elicit truth essential to correct adjudication." Sneddon v. Edwards, 53 Wash.2d 820, 335 P.2d 587, 588, 589, concerned the testimony of an engineer who had been retained by Edwards, but whose opinion did not fit his theory of the case. Sneddon then called him, but the trial court refused to permit him to testify. The Washington Supreme Court reversed, commenting

that the fact that Edwards had paid the engineer for making the investigation was not an adequate reason for excluding his testimony. To the same effect is State ex rel. Berge v. Superior Court for King County, 154 Wash. 144, 281 P. 335.

In State v. Biggers, Tex., 360 S.W.2d 516, 518, a landowner attempted to call one of the State's experts who had appraised the land. The testimony was excluded in the trial court. This was held error in the Court of Civil Appeals, and its holding was affirmed by the Texas Supreme Court. It was there said, however, that it was not error to exclude evidence that the expert witness had been employed and paid by the State Highway Department to make an appraisal of the property, since that would have been irrelevant. We do not have that problem in the instant case, since the facts of Miller's employment to appraise and his compensation by the commission were stipulated. We conclude the deposition was properly admitted in evidence.

V. The defendant requested five instructions, which the trial court refused to give. Error is assigned on this denial, and also upon the giving of certain of the court's own instructions. As to some of these, both those requested and those actually given, no exceptions appear in the record. As to others, the only record is: "Defendant * * * takes exception to Instruction No. 9 as submitted by the court, and in lieu thereof submits its Requested Instructions 1, 2 and 3 * * *. The defendant took exception to the court's refusal to submit defendant's Requested Instruction No. 5. The court overruled the exceptions."

It is evident no proper exceptions were taken. Rule 196 provides in part: "* * * Before reading them to the jury, the court shall submit to counsel its instructions in their final form, noting this fact of record, and granting reasonable time for counsel to make objections after argument to the jury and before the instructions are read to the jury. Within such time, all objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds."

We have repeatedly held that this rule means what it says. Exceptions must be taken, both to instructions given and

failure to give requested instructions, and the reasons must be specifically stated. Olson v. Truax, 250 Iowa 1040, 1050, 1051, 97 N.W.2d 900, 906, 907; Jurgens v. Davenport, R. I. & N.W. Ry. Co., 249 Iowa 711, 718, 88 N.W.2d 797, 801. Many other cases might be cited to the same effect. The defendant's failure to take proper and specific exceptions leaves nothing for review as to requested instructions or those actually given. The defendant urges that in Redfield v. Iowa State Highway Commission, 251 Iowa 332, 338, 99 N.W.2d 413, 417, 85 A. L. R.2d 96, we held that when the court had repeatedly ruled against a litigant, further objection or exceptions would be useless and failure to make them might be waived. Without analyzing further the Redfield case or what was actually held, it is sufficient to say we were there dealing with rulings on evidence. We are not inclined to abrogate rule 196 by extending the claimed holding in that case to giving or refusing to give instructions. The rule is definite, has been often interpreted and must be followed according to its terms.

VI. Error is assigned on the admission of the valuation testimony of the witness Miller because his appraisal had been made about one year before the date of condemnation. Without doubt, the reasonable market value is to be determined as of the time of, or immediately preceding, the condemnation. But we are not prepared to say that an appraisal made one year before is inadmissible in evidence. There is substantial and in fact undenied evidence in the record that conditions on the date of condemnation as to location, use and general condition of the subject property were the same in October 1958 as they were in October 1959. Miller testified that if the conditions were the same, his valuation would be the same. The trial court has a considerable discretion in such matters. In Hall v. West Des Moines, 245 Iowa 458, 468, 62 N.W.2d 734, 740, we discussed the competency of evidence of the price paid for the condemned land. We said there that the question whether the purchase was too remote in point of time is largely in the trial court's discretion. The land had been bought some eight years before, and the evidence was excluded. We said we might have been better satisfied if it had been admitted, but would not find an abuse of discretion.

It must be remembered that, while the exact issue is the value of the condemned land at the time of, or immediately before the time of, taking, anything that reasonably bears on that question is admissible in evidence. Here we have a valuation made for the defendant for the purpose either of purchase or condemnation, one year before the actual condemnation. There is no showing that conditions had changed in the meantime; in fact, the record is to the contrary. The trial court did not abuse its discretion in admitting the evidence.

██ ██ VII. The defendant contends its cross-examination of the witness Miller was unduly restricted by the court. The right of cross-examination is a basic one; but the trial court has a considerable discretion in determining its scope. Wheatley v. Heideman, 251 Iowa 695, 710, 102 N.W.2d 343, 353. We have examined the record here, and find no prejudicial error in the trial court's rulings at this point. In fact, we think the attempted cross-examination was properly excluded, and is ruled by our holding in Division I. The cross-examination which was denied was an attempt to show the values placed on the other properties, B and P, by the witness. Counsel for the commission said that "it is my contention that the testimony of Robert L. Miller is incompetent as he was valuing the property as a unit and not as a separate parcel and the evidence offered discloses he had made an appraisal of the entire tract and the values thereof as a unit."

We have pointed out above that there was no dispute in the evidence that the subject property was used as a unit with B and P, and that it was proper to consider its value as so used. Accordingly the excluded cross-examination for the purpose stated by counsel would have done nothing more than to show that the proper measure was used in fixing the valuation. We have held this was a correct formula, and the record shows it was used. There was no prejudicial error.

VIII. Complaint is made that the defendant's valuation experts were not permitted to show the sale prices of certain other tracts which it contends were similar and comparable to the subject property. In Iowa Development Co. v. Iowa State Highway Comm., 252 Iowa 978, 986, 108 N.W.2d 487, 492, we

said: "Much must be left to the sound discretion of the trial court in determining whether the other properties and conditions surrounding sale thereof are sufficiently similar so evidence of such sales is admissible." It is true we also said: "The trial court's discretion in determining whether other tracts are sufficiently similar to the property under consideration to permit evidence of sales thereof is not unlimited." Loc. cit. 252 Iowa 988, 108 N.W.2d 493.

The question at this point is therefore whether the trial court abused its discretion. We think it only necessary to point out that the sales price of other properties which the commission attempted to show did not involve the use of such tracts in connection with adjoining properties, as was the case of the lots under consideration here. This in itself would be a substantial difference in similarity and comparability upon the question of value. A lot, or lots, valuable because of use in conjunction with other property, would presumably have a different value than lots similar in all other respects but lacking the element of joint use. We do not say the other lots whose sales the defendant attempted to show here were in fact comparable in all other elements; the plaintiffs point out several other differences which they think are material. But we do not find it necessary to decide whether this is so; the element of use in connection with the nearby tracts owned by Owen Crist is in itself a sufficient difference to justify the discretion of the court in refusing admission of the evidence.

IX. It is urged that the verdict of the jury was excessive and beyond any amount fairly shown by the evidence. Although evidence of claimed comparable sales was excluded by the court as to some properties, it was admitted as to others; and the commission urges that this was the best evidence of value, and the amount allowed by the jury was so excessive that it failed to administer substantial justice. The award of the jury was $11,300. Plaintiffs' valuation witnesses fixed the value at $18,000 to $19,000, $16,200, $16,900 and $18,500 respectively. Defendant's witnesses placed it at $4700, $6500 and $4650.

We have now held that evidence of comparable sales is competent as substantive evidence in condemnation cases. Redfield

v. Iowa State Highway Comm., 251 Iowa 332, 99 N.W.2d 413, 85 A. L. R.2d 96. But we have not said that such evidence is to be received as superior to any and all other evidence, or that it is anything more than one of several facts proper to be shown as bearing on reasonable market value. Plaintiffs had the burden of proof to establish their case and to show such reasonable market value of their property as they claimed it to be. They made a prima facie case; and we are not prepared to say that the amount allowed by the jury was so excessive that we may interfere.

 It is true there are cases in which we have held, or have refused to interfere with a holding of the trial court, that an award of damages was so large as to require setting aside the jury's verdict. But the general rule is that quoted with approval in Korf v. Fleming, 239 Iowa 501, 523, 32 N.W.2d 85, 97, 3 A. L. R.2d 270, from Longstreet v. Town of Sharon, 200 Iowa 723, 727, 205 N.W. 343, 344: "A condemnation case is one in which the amount allowed is peculiarly within the province of the jury; and unless the same be shown to be so extravagant as to be wholly unfair and unreasonable, this court has repeatedly refused to interfere with the verdict of the jury." Many authorities are cited following this quotation. See also Hostert v. Iowa State Highway Commission, 250 Iowa 253, 256, 93 N.W.2d 773, 775, and Danker v. Iowa Power & Light Co., 249 Iowa 327, 332, 86 N.W.2d 835, 839. It is also to be observed that the trial court here did not find the ends of justice required its interference, and it has a large discretion in determining this question.

We have considered the several assignments of the defendant, and find no prejudicial error.—Affirmed.

GARFIELD, C. J., and LARSON, MOORE, PETERSON, SNELL, STUART and THORNTON, JJ., concur.

HAYS, J., takes no part.