COMMERCIAL CREDIT CORPORATION, A CORPORATION, APPELLANT, v. JOHN BOYKO, RESPONDENT.

Submitted February 11, 1927—Decided May 24, 1927.

1. Although pleas of abatement are abolished by the Practice act of 1912, and objections by motion substituted therefor, this change in practice did not operate to change the common law rule as to the legal effect of such pleas, if sustained or overruled; therefore, the proper practice in such cases, if the objections to the complaint are well founded, is to strike out the complaint and dismiss the action, rather than to direct a verdict for the defendant.
2. When a note is payable at a particular place it is to be treated, in all respects, as if made there, without regard to the place where it is dated or delivered.
3. Foreign corporations, without complying with the provisions of section 98 of the Corporation act, may maintain suits in this state on contracts made outside of the state.

---

On appeal from the Passaic County Circuit Court.

For the appellant, *Green & Green (Harry Green,* of counsel).

For the respondent, *Feder & Rinzler.*

The opinion of the court was delivered by

KALISCH, J. A judgment was entered in the Passaic County Circuit Court, upon a verdict directed in favor of the defendant, by the trial judge, in an action brought by the plaintiff below, against the defendant below, to recover the amount claimed to be due from the latter on a promissory note given by him to the Wimple Auto Company, Incorporated, and which note was endorsed over by the Wimple company to the plaintiff company.

The plaintiff's complaint alleges that it is a corporation, having its principal business in the city, county and State of New York; that it is the holder of a promissory note made by the defendant to the order of Wimple Auto Company, Incorporated, the amount of the said note being $987.66, a copy of which is annexed to the complaint; that the plaintiff purchased the note from the said Wimple Auto Company, Incorporated, for value before maturity, and without notice of any infirmities or defects therein, and that there is due and owing on said note to the plaintiff from the said defendant the sum of $750.

The defendant filed an answer of general denial to the complaint and set up several defenses, to wit: That the note was procured by fraud; that the note was paid; that there was no consideration for said note; that the plaintiff was not a *bona fide* holder for value; that the plaintiff is a foreign corporation and before transacting any business in this state did not file in the office of the secretary of the state a copy of its charter, or certificate of incorporation, in the manner as required by the statute; that the contract and business transacted by the plaintiff, upon which the action is based, was made and transacted in this state, and as such foreign corporation it was not authorized to transact business in this state, and, therefore, could not properly maintain an action against the defendant upon the note sued.

The plaintiff, in its reply, denied each and every allegation of the defenses interposed.

On the trial, the plaintiff introduced testimony which tended to establish that it had acquired the note before its maturity for value and in good faith and without any notice

of any infirmities or defects in the note. On cross-examination it was disclosed that the plaintiff is a foreign corporation, and at the time it brought its action it was not authorized to transact business in this state, and that it had constantly transacted business in this state for a period of eight years. It further appeared on the plaintiff's case that the action was commenced in November, 1923, and that it was not until June 22d, 1924, that the plaintiff was authorized to transact business in this state.

Although the defendant in his ninth separate defense gives notice that at the time of the trial or prior thereto, on notice, he will move to strike out the complaint and dismiss the action for the reason that the plaintiff was ineligible to sue, no such notice was given or motion made, and even upon the conclusion of the plaintiff's case there was no motion made, on behalf of the defendant, to quash the writ, because of the ineligibility of the plaintiff to sue at the time the action was brought.

The testimony adduced, on behalf of the defendant, to establish that the note in question was tainted with fraud, proceeded solely from him. His testimony is utterly barren of any fact or circumstance tending to show that the plaintiff was not a holder of the note in due course, but even if there was such fact or circumstance present, the utmost effect that would have would be to raise a factual question for a jury to determine.

At the close of the case, on behalf of the defendant, it was moved for a direction of a verdict in his favor. The motion was rested upon two grounds: *First,* that the plaintiff was not legally qualified to maintain an action in this state, which action was begun prior to July, 1924, at which time it secured a certificate authorizing it to transact business in this state; *secondly,* that there was fraud in the inception of the contract.

The trial judge directed a verdict for the defendant on the single ground that the plaintiff was ineligible to maintain its action because at the time when the action was instituted it was not legally authorized so to do, in view of the provision of section 98 of the General Corporation act of New Jersey. *2 Comp. Stat., p.* 1658.

In disposing of the motion, the trial judge said: "On the first point I hold that there should be a directed verdict under section 98 of the General Corporation act of New Jersey, which says that no action can be maintained by a foreign corporation until it has complied with the act by getting a proper certificate. That such a certificate was not procured, and it seems to me under the clear language of that act, the action may not be even commenced until such a certificate is secured.

"Counsel has pointed out that in the case at bar there is some testimony that this contract or transaction took place in New York, and that the plaintiff corporation was not doing business in this state for which it then had no certificate. But that is not the point that is involved in this decision and I do not pass upon the question of whether or not the transaction itself was done in the territory of New Jersey or in the territory of New York, but I base my decision wholly upon section 98 of the Corporation act and direct a verdict for the defendant on the ground that under the section the plaintiff corporation had no authority to bring suit at the time it did in this state; and the decision being on that point, there is no ruling on the second ground urged for a directed verdict."

The act referred to by the learned judge reads: "Until such corporation so transacting business in this state shall have obtained said certificate of the secretary of state, it shall not maintain any action in this state, upon any contract made by it in this state; provided that nothing herein shall prevent the enforcement of any contract made prior to the fourteenth day of March, one thousand eight hundred and ninety-five."

There is a diversity of judicial opinion, as appears from the decisions of the courts of our sister states, in construing a statute of like import, on the question whether an action brought by a corporation, not eligible to sue, under the statute, at the time the action is instituted, can, after the bringing of such action, by complying with the terms of the statute, maintain the action. In a majority of the states, the courts thereof have held that the word "maintain" in

the statute does not inhibit the institution of the action, but refers to a situation that any time after the action is brought, a foreign corporation may qualify itself to maintain such action, and prosecute to a final end, by first complying with the terms of the statute. 14 *Corp. Jur.* 1302, 1303, 1304. The trend of authority supports this view. See *National Fertilizer Co.* v. *Fall River Five Cents Savings Bank et al.,* 196 *Mass.* 458, 460; 82 *N. E. Rep.* 671 (at *p.* 673); 14 *L. R. A.* (*N. S.*) 561; where the cases on the subject are collated.

In view of the evidence in the cause, later to be referred to, we find it unnecessary to express any opinion on the meaning and scope of the statute, but before leaving this topic, comment upon the procedure adopted will not be out of place.

As has already been observed, the defendant in his answer gave notice that a motion would be made before or at the trial to strike out the complaint on the ground that the plaintiff was ineligible to maintain the action. The record does not disclose that any such motion was made. The matter set up as a ground of the motion was, at common law, the subject-matter of a plea in abatement; for it alleges disability on part of the plaintiff to maintain its suit. 1 *Chit.* 460, says: "In pleading to the person of the plaintiff or defendant, in respect of disability to sue or be sued, and not merely on account of the non-joinder of another party, the plea should conclude with a prayer, if the plaintiff ought to be answered," &c. In 1 *Tidd Pr.* 636, the learned author says: "Pleas in abatement to the action of the writ are, that the action is misconceived or was prematurely brought before the cause of it arose." &c. "The general requisites of a plea in abatement are that it should be certain, give the plaintiff a better writ," &c., and on page 694, the author says: "The judgment for the defendant on a plea in abatement, whether it be an issue of fact or in law, is that the writ or bill be quashed  *  *  *."

In *Cowell* v. *Oxford,* 6 *N. J. L.* 432, in an action of debt against an executor to recover the amount of a legacy which had been bequeathed to the plaintiff by the testator, the

plaintiff having failed to file a refunding bond, on a plea of abatement filed by the defendant, the action was quashed.

In *Smith* v. *Van Houten,* 9 *N. J. L.* 381, it was there decided that if a defendant would take advantage of the infancy of the plaintiff suing alone, the proper mode of raising the objection, in courts proceeding, according to the course at common law, is by plea in abatement; and upon the fact of infancy appearing, the justice of the peace before whom the case was tried might have admitted a guardian for the plaintiff or should have dismissed the suit. In *Allerton* v. *Grundy,* 67 *N. J. L.* 55, it was held, at page 58, that the true practice seems to be where a foreign corporation sues, without authority to sue under the Corporation act, to plead in abatement.

By rule 38 of the Practice act of 1912 (*Pamph. L., p.* 391), relating to dilatory pleas, it is provided: "Pleas to the jurisdiction and pleas in abatement are abolished. In lieu thereof objection shall be made on motion. The evidence necessary to determine the question may be taken by affidavit, or as the court may direct. The action of the court upon such motion may be reviewed on appeal after final judgment."

The abrogation of pleas to the jurisdiction and pleas in abatement, and substituting therefor an objection to the proceedings on motion, did not operate to change the common law rule relating to the legal effect of such pleas if sustained or overruled, as to their incident. Therefore, when the trial judge decided that the plaintiff labored under disability to maintain the action by reason of its being a foreign corporation, without authority to sue in this state, at the time the action was instituted, the proper course for him to pursue was to strike out the complaint and summons and dismiss the action. The fact appearing that the plaintiff was without authority to sue, the court was deprived of jurisdiction to deal with the cause, and, hence, could not properly direct a verdict for the defendant.

Assuming that the construction given by the trial judge to section 98 was a proper one, we think that under the evidence in the case the section was not applicable to the contract sued

upon by the plaintiff. It cannot be successfully controverted that if the contract sued upon by the plaintiff was a New York contract, it did not come within the inhibition of section 98, and, therefore, the plaintiff was entitled to maintain its action.

The note sued upon is dated, Passaic, New Jersey, May 17th, 1923, and reads: "Payable at the office of Commercial Credit Corporation, New York, N. Y., in twelve monthly installments of $81.55 each."

The law is firmly settled in this state that when a note is made payable at a particular place, it is to be treated in all respects as if made there without regard to the place where it is dated or delivered. *Ball et al.* v. *Consolidated Franklinite Co.,* 32 *N. J. L.* 102. In *Mayer* v. *Roche,* 77 *Id.* 681, Mr. Justice Swayze, speaking for this court (at *pp.* 681, 682), says: "It was admitted that the note was signed by Mrs. Roche, in this state, where she resided, that she received nothing thereon, and was either an accommodation guarantor or surety for the other makers. The note is dated and payable in New York, but it does not appear whether it was delivered in that state or in New Jersey. The case, therefore, differs from *Thompson* v. *Taylor,* 37 *Vr.* 253, where it appeared that the wife delivered the note to the husband without limitation of the use he might make of it, and that he transferred it to the payee in New York City. It differs also from *Mechanic's Bank* v. *Chardavoyne,* 40 *Id.* 256, where the wife had clothed her husband with apparent authority to use the note as he chose, and he had negotiated it in Brooklyn. * * * In the English courts it has finally been held that the proper law of a contract is the law or laws by which the parties to a contract intended, or may fairly be presumed to have been intended, that the contract be governed. *Hamlyn* v. *Talisker Distillery* (1894), *App. Cas.* 202, a careful and learned review of which, by Judge Schofield, is to be found in 9*th Harv. L. R.* 371. This rule is substantially that expressed by Lord Mansfield in *Robinson* v. *Bland,* 2 *Burr.* 1077, and more exactly by Chief Justice Marshall in *Raymond* v. *Southard,* 10 *Wheat.* 48, where he said: 'That in every forum the contract is governed by the law with the view to

which it was made.' And at page 684, the learned justice continues: 'This view of the presumed intention of the parties, based upon the well-settled rule as to the effect of the place where the contract is made and the place where it is to be performed, is in accord also with the general principle which would lead us to hold that the parties meant to make a binding contract, and neither meant to mislead the other.' For these reasons we think the note in question is governed by the New York law, and as it is admitted that by that law a married woman is liable upon a promissory note, although she is only an accommodation guarantor or surety, the learned trial judge rightly found in favor of the plaintiff."

So, in the case *sub judice,* it seems to us,, from the facts developed by the testimony, the parties of the contract must be presumed to have intended to enter into a binding contract under the laws of the State of New York, for though the contract of sale was made by the Wimple Auto Company, at Passaic, New Jersey, it contained this significant clause which clearly indicates that the note, given by the defendant in payment for the automobile,, was to be delivered to the plaintiff in New York and to be paid there. The purchaser's (defendant's) signed statement on the bill of sale, among other things, contains the following: "Undersigned will pay said note irrespective of any imperfections in the motor vehicle or any breach of alleged representation. You and/or Commercial Credit Corporation are authorized to correct patent errors in said contract and other papers executed by undersigned in connection therewith."

Taking this language in connection with the fact that the note was made payable to the order of Wimple Auto Company, at the office of Commercial Credit Corporation, New York City, New York, and was subsequently endorsed over to the latter, the note became an obligation, arising under the law or laws of the State of New York, and, hence, was suable in the courts of this state by the plaintiff, even though it was a foreign corporation at the time the action was brought.

Foreign corporations, without complying with the provision of section 98 of the Corporation act, may maintain

suits· in this state on contracts made outside of the state. *Faxon Co.* v. *Lovett Co.,* 60 *N. J. L.* 128; *Allerton* v. *Grundy,* 67 *Id.* 55; *MacMillan Co.* v. *Stewart,* 69 *Id.* 212; *Slaytor Jennings Co.* v. *Specialty Paper Box Co.,* 69 *Id.* 214; *Bell Telephone Co.* v. *Galen Hall Co.,* 77 *Id.* 253; *Low* v. *Davy,* 83 *Id.* 540.

The only permissible inference from the testimony in the instant case is, that it was the intention of the parties that the note in controversy was to be endorsed over and delivered to the plaintiff in New York, and to be paid there, in pursuance of the laws of that state, relating to such obligations, and that being so, it became a New York contract, for a breach of which the plaintiff was entitled to sue in this state.

For the reasons above set forth, the judgment must be reversed, to the end that a *venire de novo* be awarded.

Judgment is reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.