Boss Hotels Company, appellant, v. City of Des Moines et al., appellees.

No. 51985.

(Reported in 141 N.W.2d 541)

April 5, 1966.

Rehearing Denied May 11, 1966.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellant.

Anthony Renda and M. A. Iverson, both of Des Moines, for appellees, members of the City Council and City of Des Moines, Iowa.

Harris, Thoma, Schoenthal, Davis & Hockenberg, of Des Moines, for appellees, River Hills Motor Inn Company and F. W. Weitz.

Dickinson, Parker, Mannheimer & Raife, of Des Moines, for appellee National Motor Inn Corp.

THORNTON, J.—This action of plaintiff, Boss Hotels Company, herein called Boss, is to restrain defendant City and the members of its council, herein referred to as City, defendants, River Hills Motor Inn Company and F. W. Weitz, herein referred to as River Hills Motor Inn, and defendant National Motor Inn Corp. from consummating sales of urban renewal land. After trial, the court dismissed plaintiff's action.

The land in question is two parcels in River Hills Urban Renewal area in Des Moines. The Urban Renewal Plan has been approved pursuant to the Housing Act of 1949, 63 Stat. 413, as amended, 42 U. S. C. A., section 1441 et seq., and chapter 403, Code, 1962, by the Federal Agency and the City, Local Public Agency, and its Urban Renewal Board. Under the plan and the zoning ordinance of Des Moines the two parcels, T-1 and T-3, are zoned for tourist-commercial use and might be sold for that use to redevelopers under restrictions which required a minimum lot area of 750 square feet per unit, off-street parking requirements, a floor area ratio of .5, and landscaping and sign requirements. Under the restrictions the height of a motel erected on either parcel was limited to three stories or 45 feet.

In accordance with Urban Renewal Plan the Urban Renewal Board solicited proposals to purchase parcels T-1 and T-3. Plaintiff Boss, defendant River Hills Motor Inn and the Holiday

Inn people submitted proposals on parcel T-3. National Motor Inn submitted a proposal on parcel T-1, plaintiff Boss did not. The cutoff date on such proposals had been fixed for November 2, 1964. The proposals were on file as of such date. November 10, 1964, the Board recommended to the City Council the acceptance of the proposal of River Hills Motor Inn on parcel T-3 and of National Motor Inn on parcel T-1. On November 16, 1964, the City Council, pursuant to the recommendation, accepted the proposals of River Hills Motor Inn and National Motor Inn subject to the approval of the Federal Agency.

Briefly stated the proposals were, Boss offered $240,000 and to erect a motel varying in height from two to six stories and River Hills Motor Inn offered $236,396.70, and to erect a motel of eight stories, on parcel T-3. National Motor Inn offered the minimum cash price of parcel T-1 and to build a five-story motel. Each of these proposals proposed motels of greater height than permitted under the restrictions then applicable and in each there was some variance with the area restrictions. Each proposer knew this and each had been led to believe modifications of the restrictions would be made in these particulars. If this were not true all of the proposals were in bad faith. There is no reason to believe any of them were.

On November 16, 1964, the City amended the Urban Renewal Plan so the proposals were not at variance with the Plan or city zoning ordinance. In other words, after the proposals were in, after the cutoff date for filing proposals, and after the proposals of defendants River Hills Motor Inn and National Motor Inn had been accepted, on that date the City Council modified the Urban Renewal Plan so that the proposals conformed to the Plan.

I. Plaintiff states in its Brief and Argument, "Appellant's case is bottomed on the proposition that under the Urban Renewal Plan, no structure on Parcels T-1 and T-3 could exceed three stories or 45 feet in height, and that the City was legally incapable of accepting bids which contemplated structures in excess of the limitation."

The trial court held plaintiff had failed to establish the allegations of its petition and plaintiff lacked standing to sue.

Plaintiff's first proposition for reversal here is, "Under section 403.8 of the Code of Iowa, 1962, purchasers of urban renewal real property 'Shall be obligated to devote such real property only to the use specified in the urban renewal plan.' Therefore, the bids of Sheraton [River Hills Motor Inn] and National Motor Inn may not be accepted by the City because such bids propose structures in excess of three stories or 45 feet in height—a use not permitted by the urban renewal plan."

 This proposition, on its face at least, limits the consideration of illegality to whether the change in height restrictions constitutes a change in the use.

Clearly it does not, an examination of the Loan and Capital Grant Contract for the urban renewal project between the City and the United States, the excerpts from the Urban Renewal Manual, the Urban Renewal Plan and the zoning ordinance of Des Moines, as these appear in this record, do not equate a use of the land with restrictions on the height of buildings. The documents are too long and refer to uses too many times to set out each occasion where the words are used. A few examples are, in the Urban Renewal Manual, "Chapter 2. Planning Proposals, Section 1. Land Uses and Related Proposals," is this sentence, "Regulations, controls, and restrictions in the Urban Renewal Plan must assure that acquired property will be maintained and controlled for the intended uses for the duration of the Plan." In this instance a restriction is contemplated to assure the intended use. It is not the use.

In the Urban Renewal Plan we find under "C. Land Use Plan * * * 2. Land Use Provisions and Building Requirements. a. Permitted Land Uses: * * * b. Statement of Regulations and Controls." As you continue through the plan you find "(3) Tourist Commercial Area." Under "Uses Permitted: Motor Hotels, * * *," and under "(a) Motor Hotel Restrictions:" we find only area restrictions. Under "(6) General Commercial Area," under "Uses:" we find a long list of permitted uses, then yard and area restrictions and then, "Maximum Height: Three stories, but not (including Chimneys) over 45 feet."

In the city ordinance under definitions "use" is not defined. The definitions of "accessory use" and "nonconforming use" do

not equate use and height restriction. As we proceed through the ordinance we find, " 'R-1' Residence District, 2A-8 Regulations. * * * A. Principal Permitted Uses: * * * B. Accessory Uses: * * * 2A-9 Height Regulations. * * *." The same is true as we proceed through the ordinance under each district. The uses permitted and height regulations are separately stated.

In this regard see Schueller v. Board of Adjustment of the City of Dubuque, 250 Iowa 706, 95 N.W.2d 731; McJimsey v. City of Des Moines, 231 Iowa 693, 2 N.W.2d 65; 101 C. J. S., Zoning, section 141, page 901, Height of buildings; and 101 C. J. S., Zoning, section 148, pages 907, 908. The use refers to the activity carried on on the premises. This is not changed by a change in the height regulation or restriction.

Plaintiff does not urge any other statute or ordinance was violated in any respect here under its first proposition. Neither the proposals of defendants River Hills Motor Inn nor National Motor Inn nor the action of the City Council in modifying the Urban Renewal Plan to allow buildings of the height proposed violates section 403.8, Code, 1962, in the respect urged.

█ █ If in fact plaintiff means to argue here the City could not legally accept the bids because they did not conform to the Plan and ordinance, plaintiff at least runs into the difficulty that its nonconforming bid was not in good faith and it could not prevail because of the clean hands doctrine. Equity refuses aid to one who had been guilty of inequitable conduct in the matter with relation to which he seeks relief. Sisson v. Janssen, 244 Iowa 123, 56 N.W.2d 30.

Actually the record here shows plaintiff knew modifications of the Urban Renewal Plan would be made to conform to a proposal otherwise satisfactory. Plaintiff does not contend there was any fraud or collusion or that it was prevented from making a proposal on the same basis as any other developer. The proposal it made shows this.

The Urban Renewal Plan provides the council could make minor modifications and section 403.5(5), Code, 1962, provides, "5. An urban renewal plan may be modified at any time: * * *." There follows a proviso not here applicable. Plaintiff was aware of the provisions of the Plan and is bound to know the statute.

■ In this regard plaintiff urges a change in a height re-striction from three to eight stories is a major, not a minor, modification. We cannot agree. It undoubtedly is a major modification in a building, but it is not a major modification in an urban renewal plan. The plan remains intact, the use of the particular tract remains the same, only the height of the building permitted is modified. An authority squarely in point has not come to our attention, but, as having some bearing, see Pittsburgh Hotels Association, Inc. v. Urban Redevelopment Authority of Pittsburgh, 309 F.2d 186, 190, 191.

■ II. The second proposition urged by plaintiff here is that the proposed sales of parcels T-1 and T-3 were for less than their fair value, thus violating section 403.8, Code, 1962, in part as follows, "Such real property * * * shall be sold * * * at not less than its fair value for uses in accordance with the urban renewal plan." We do not find this proposition was pleaded below. Defendants so urge and plaintiff in reply does not challenge them. It is not properly before us. We are limited by the record made in the trial court. Nelson v. Leaders, 258 Iowa 919, 140 N.W.2d 921; Best v. Yerkes, 247 Iowa 800, 811, 77 N.W.2d 23, 60 A. L. R.2d 1354; and Stolar v. Turner, 237 Iowa 593, 606, 21 N.W.2d 544.

■ We may say, however, under the bidding procedures adopted by the City Council pursuant to the Urban Renewal Plan allowing for considerations other than price, where, as here, the proposals accepted were substantially if not actually the appraisal price, the determination by the City Council that the proposed price was not less than the fair value has substantial support and should not be disturbed by us on the showing made by plaintiff. Plaintiff's chief executive officer did testify, that if he had any idea he could have put an eight- or ten-story building on T-3 he would have raised his bid up, "* * * say possibly as much as $15,000 because we could save twice that."

III. We do not reach the question of plaintiff's standing to sue.

Under the record made plaintiff has not shown it is entitled to the intervention of a court of equity. We think the record shows plaintiff knew, as the others making proposals knew, the

council would act to modify the Urban Renewal Plan in respect to height restrictions. Its proposal is evidence of this. The stated policy of urban renewal legislation to expeditiously return blighted areas to productive use should not be thwarted under this record.—Affirmed.

All JUSTICES concur.