INN OPERATIONS, INC., appellee, v. RIVER HILLS MOTOR INN COMPANY, a partnership, et al., appellants.

No. 52490.

(Reported in 152 N.W.2d 808)

September 22, 1967.

Philip T. Riley and M. A. Iverson, of Des Moines, for appellants City of Des Moines, Charles Iles, George Whitmer, Jens Grothe, Wallace Buss and George Nahas, as members of City Council and Urban Renewal Board.

Thoma, Schoenthal, Davis, Hockenberg & Wine, of Des Moines, for appellants River Hills Motor Inn Company and F. W. Weitz.

Connolly, O'Malley & Conley, of Des Moines, for appellee.

MASON, J.—Inn Operations, Inc., a Kansas corporation, brought this equity action to restrain defendant city of Des

Moines and members of its council and urban renewal board (herein referred to as "city"), defendant River Hills Motor Inn Company, a limited partnership of Des Moines, and F. W. Weitz, a general partner therein, individually, (both herein referred to as Motor Inn) from consummating sales of urban renewal land. The city acquired the land in question, Parcel T-3, as a part of River Hills Urban Renewal area.

The urban renewal plan for River Hills Project had been approved pursuant to the Federal Housing Act of 1949, 63 Stat. 413, as amended, 42 U.S.C.A. section 1441 et seq., and chapter 403, Code, 1962, by the federal agency and the city, local public agency and its urban renewal board March 28, 1960. It was revised February 5, 1962, and again January 21, 1963. Under the Federal Housing Act the local program is administered by a local public agency, here the city. Defendant city appointed an urban renewal board as an advisory board to make recommendations to the council, acting itself as the local governing body, and reserved to itself the exercise of the urban renewal powers as specified in section 403.14, paragraphs (1) and (2), chapter 403.

The plan provided that recommended zoning districts within the renewal area "were established as most closely approaching regulations and controls for the area. Wherever these regulations and controls are at variance with the provisions of the Des Moines zoning ordinance, the most restrictive regulations shall take precedence."

Sale of Parcels T-1 and T-3 in this renewal area was previously before us in Boss Hotels Company v. City of Des Moines, 258 Iowa 1372, 141 N.W.2d 541.

Plaintiff alleged some of the city's procedures in connection with disposition of urban renewal property were illegal and asked that defendants be permanently enjoined from entering into any contract with other than plaintiff for the sale and development of Parcel T-3 in River Hills Urban Renewal area; the city be enjoined from taking any steps to perform any contract for the sale thereof to other than plaintiff and be directed to sell and contract with plaintiff for the sale and purchase of Parcel T-3.

After trial the district court permanently enjoined de-

fendants from entering into any contract for the sale and disposal of Parcel T-3, pursuant to Motor Inn's proposal under the disposal procedures used by the city and held any contracts already entered into illegal and void. Defendants moved to vacate the decision, for a new trial and to enlarge and amend the court's findings of fact and conclusions of law and to modify judgment. The motion was overruled with the exception of certain changes in the findings of fact, conclusions of law, summary and direction.

I. Under the Des Moines zoning ordinance adopted as part of the plan, Parcel T-3 is zoned for tourist-commercial use and might be sold for such use to redevelopers under restrictions which required a minimum lot area of 750 square feet per unit, off-street parking requirements, a floor area ratio of .5 and landscaping. Under the restrictions the height of a motel to be erected on the parcel was limited to three stories or 45 feet; sign restrictions included a provision no sign shall be greater than 30 feet above curb level.

The urban renewal board's recommendation to proceed with the disposition of the land in the River Hills area under negotiated open competitive conditions method set forth in the urban renewal manual (exhibit 2) entitled "Fixed Price with Bidding on Other-Than-Price Basis" was adopted by the council January 15, 1962.

Proposals to purchase various tracts in River Hills were solicited. The disposition parcels, including T-3, were advertised and a cutoff date for proposals of August 16, 1963, was set. When no bids were received the federal agency and the city agreed the latter would proceed as permitted by the manual under type B for a negotiated disposal of Parcels T-1 and T-3.

May 12, 1964, the board received the first submission by Downtowner for a five-story motel with 148 units on Parcel T-1. Plaintiff's president, Mr. Brock, attended the meeting while this proposal was being made or reviewed.

Plaintiff submitted a proposal on T-3 for two 2-story buildings containing 120 units at an amount substantially under that then asked which was discussed at the August 25 board meeting. Plaintiff negotiated with the board at this meeting

and was told: "We are not in a position to take your offer where the price is concerned. We think it requires further negotiating between our staff and your company to see if an actually agreeable proposal can be made."

Parcels T-1 and T-3 were reappraised and a reuse study was reported at the September 1 board meeting. During the summer and fall many board meetings were concerned with the use of these parcels and the minimum price for which they could be sold.

After reappraisal the board decided to readvertise because of new lower prices, time for receiving proposals was extended to October 30 and the staff was advised to notify all concerned "that alternate uses for the property would also be considered."

At an October 27 board meeting the cutoff date for receiving proposals on the disposition parcels was extended to November 2, 1964.

On the latter date Motor Inn submitted a proposal for an eight-story structure and the purchase of T-3. The bid was expressly subject to rezoning or modification to permit thereon the erection of a motel in conformance with the plan attached.

Boss Hotels submitted a proposal for a six-story structure and plaintiff an amended proposal for a three-story structure and purchase of T-3. No proposal met all building restrictions applicable to the area, each required some modification of the renewal plan.

At a November 10 meeting the renewal board permitted those making proposals to make oral presentations.

Motor Inn described in some detail to the board the make-up and structure of its partnership and financial responsibility. The board then voted to recommend to the City Council a contract be awarded to Motor Inn.

November 16 the city conditionally accepted Motor Inn's proposal subject to final approval by the federal agency and authorized and directed the renewal board to negotiate a formal written contract with Motor Inn and present it to the council for approval and execution.

That day the city also adopted a modification of the River Hills Urban Renewal plan, as revised, amended and modified,

by removing the height restrictions and modifying floor area and sign restrictions on both T-1 and T-3 so the proposal was not at variance with the plan or zoning ordinance. In other words, after the proposal was in, after the cutoff date for filing proposals, and after the proposal of Motor Inn had been accepted, the city council modified the urban renewal plan so the proposal conformed thereto. March 15, 1965, the city approved this modified urban renewal plan.

The formal written contract resulting from negotiations between the board and Motor Inn was submitted to the federal agency for approval and concurrence. The federal agency concurred in the offering and the contract between the city and Motor Inn was signed.

The validity and procedure of the revisions and modifications of November 16 and March 15, 1965, constitute one of the issues in this litigation.

Motor Inn's proposal, accepted by the City, exceeded the restrictions of the plan and the zoning ordinance in these particulars: the floor area ratio of the proposal was .78, approximately 55 percent in excess of the permitted ratio; the building structure 85 feet high, 35 feet in excess of the height restrictions; the building structure eight stories in height, five stories in excess of the restriction; and the sign was 90 feet above curb level, 60 feet in excess of the restriction.

The city's modification of the urban renewal plan was adopted without notice and public hearing and without observing the requirements and procedures by which the plan was originally adopted. It eliminated the restriction regarding use and development of tourist-commercial areas, including Parcel T-3, as to the maximum floor area ratio: .5, the height restriction building and structure of 45 feet or three stories and the specific restriction as to signs, while retaining floor area ratios and height restrictions in other districts.

Plaintiff's proposal complied with the urban renewal plan except in the matter of floor area ratio. This was computed by the city plan and zoning staff and reported to the board as .53.

II. The trial court found the city failed to comply with Code section 403.8 and procedures used to dispose of the parcel

did not comply with the statutory requirement that sale be held under reasonable competitive bidding procedures. This failure resulted in every qualified developer not having a fair opportunity to submit a bid or proposal. Although plaintiff was specifically advised it should observe the plan and zoning ordinances, Motor Inn was encouraged by the urban renewal director to submit a proposal on T-3 higher than three stories and 45 feet. Plaintiff relied on the representations this restriction would be enforced and complied with it in making its proposal.

The court further found the fair value of the parcel was affected by the restrictions on height of structure and maximum floor area set forth in the plan and zoning ordinance and the city's failure to notify qualified developers these restrictions would not be enforced may have prevented greater return to the city and the United States upon sale of the property.

It appeared to the trial court that the city's adoption of modification of the plan was an endeavor to qualify the proposal of Motor Inn otherwise, in substantial violation of the plan and zoning ordinance.

The court held Motor Inn's proposal did not comply with the plan and zoning ordinance; modification of the plan after the date for receiving proposals and approval of Motor Inn's proposal could not be retroactive to November 2, 1964; modifications of the plan were illegal, inequitable and void and, as stated, directed that a permanent injunction issue.

III. Defendants appeal, assigning ten propositions relied on for reversal. Our review is de novo. Rule 334, Rules of Civil Procedure. Consideration of defendants' propositions will not necessarily follow the order of assignment. Those not dealt with in this opinion have been deemed to be without merit.

Defendants contend plaintiff, a foreign corporation doing business in Iowa without a certificate of authority to do so, has no capacity or right to maintain this action, relying on Code sections 496A.103 and 496A.120.

Section 496A.103 provides in part:

"No foreign corporation shall have the right to transact

business in this state until it shall have procured a certificate of authority so to do from the secretary of state. * * *."

Section 496A.120 provides in part:

"No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state, until such corporation shall have obtained a certificate of authority, * * *.

"The failure of a foreign corporation to obtain a certificate of authority to transact business in this state shall not impair the validity of any contract or act of such corporation, and shall not prevent such corporation from defending any action, suit or proceeding in any court of this state."

These sections are based on sections 99 and 117 of the Model Business Corporation Act.

Plaintiff filed its petition February 15, 1965, and service was immediately had on defendants. Motions to dismiss, asserting plaintiff had failed to plead sufficient facts to establish its standing to maintain the action in that it had neither alleged it was a domestic corporation nor pleaded facts showing compliance with section 496A.120 were filed by Motor Inn March 19 and by the city March 23. Plaintiff filed amended petition March 29 alleging it was authorized to do business in Iowa and that a certificate of authority therefor had been issued. The certificate was issued March 26. Both motions were overruled July 14.

Defendants' proposition presents the question whether a foreign corporation not eligible to sue under the statute at the time the action is instituted can, after bringing it, maintain the action by complying with the terms of the statute.

The State has filed brief as amicus curiae in support of defendants' position and argues the word "maintain" implies a prohibition against beginning the action, that maintaining an action is itself commencement and quotes the following from 17 Fletcher Cyclopedia Corporations, 1960 Revised Volume, section 8538:

"It is the majority rule that the prohibition in the statute against maintaining an action implies a prohibition against

beginning it, for the beginning of the action is one of the necessary steps in maintaining it, and the word 'maintain' as used in the statute is construed to be practically synonymous with 'bring' or 'begin'." Citing G. Heileman Brewing Co. v. Peimeisl (1901), 85 Minn. 121, 88 N.W. 441, and citations.

However, the above quotation is immediately followed in the text by this:

"But in a well-considered Massachusetts case under a statute providing that no action shall be maintained or recovery had in any of the courts of the state by any foreign corporation so long as it fails to comply with the statutory conditions precedent to its right to do business in the state, and also providing that failure of foreign corporations to comply with such conditions shall not affect the validity of contracts made by or with such corporation, it is held that the word 'maintain' carries a different meaning from 'institute' or 'begin,' and implies that an action must be begun before it can be maintained; and that the effect of the statute is, therefore, when noncompliance with its terms is seasonably and properly pleaded, to stay proceedings until the temporary disability is removed, which can be done at any time after as well as before resort to the courts." Citing National Fertilizer Co. v. Fall River Five Cents Sav. Bank (1907), 196 Mass. 458, 82 N.E. 671, 672, 673, 14 L.R.A., N.S., 561, 564.

An annotation in 6 A.L.R. 3d 326, 331, states:

"Under statutes which merely provide that a noncomplying corporation shall not maintain or prosecute or defend any suit in the courts of the state until compliance is made with the statutory requirements, it is generally held that a compliance after an action has been begun is sufficient to enable the corporation to maintain the action. However, there are some cases to the contrary." Cases from many state and federal jurisdictions are cited in support.

We know of no prior decisions of this court on the precise issue presented. However, in his comment at page 111, 28B I.C.A. Mr. Clarence Cosson states:

"Under the Iowa Business Corporation Act contracts made by a foreign corporation improperly transacting business in Iowa without authority are not permanently unenforceable.

They are merely unenforceable until the corporation secures a certificate of authority, after which they are fully enforceable."

In Model Bus. Corp. Act Ann., section 117, paragraph 4, it is stated:

"If suit has been instituted prior to qualification, the corporation may then qualify and continue its litigation without the necessity of refiling suit after qualification, * * *."

We now hold the word "maintain" in the statute does not inhibit the institution of the action and that a foreign corporation may at anytime after the action is brought maintain and prosecute it by first complying with the terms of the statute. As further support for this conclusion see Commercial Credit Corporation v. Boyko, 103 N.J.L. 620, 137 A. 534, 536.

Defendants' contention under this assignment cannot be sustained.

IV. Under another assignment defendants contend plaintiff is not a taxpayer and citizen of the city or state and may not question the city's procedure in this matter; that as a disappointed bidder plaintiff has no standing to sue. Motor Inn had asserted this contention as an affirmative defense.

In Boss Hotels Company v. City of Des Moines, supra, the question of that plaintiff's standing to sue was raised but not reached.

 Equity has jurisdiction to prevent public officers and boards from letting or carrying out unauthorized and illegal contracts for public improvements. 43 C.J.S., Injunctions, section 120. Ordinarily a disappointed bidder for a contract, unless he is also a taxpayer, is not a proper party to sue for an injunction in a representative action. Day v. City of Beatrice, 169 Neb. 858, 101 N.W.2d 481, 486, citing 43 C.J.S., Injunctions, supra; State ex rel. Helena Allied Printing Council v. Mitchell, 105 Mont. 326, 74 P.2d 417, 420; Malan Constr. Corp. v. Board of County Road Commrs. (E.D. Mich. S.D.), 187 F. Supp. 937, 939; Fetters v. Mayor & Council of Wilmington, 31 Del. Ch. 338, 73 A.2d 644, 647; Waszen v. Atlantic City, 1 N.J. 272, 63 A.2d 255, 256.

In the Fetters and Waszen cases the courts distinguished between the status of the litigant taxpayer and that of the

unsuccessful bidders in resolving issues as to standing. In both decisions taxpayer-litigants were held to have standing while mere unsuccessful bidders were held to lack standing.

In its amended petition plaintiff alleged it was a taxpayer within the state and entitled to pursue the pending litigation. To support this allegation plaintiff asserts its ownership of all stock of Des Moines Hotels, Inc., and Iowa Super Hotels, Inc., qualified it as a taxpayer for purposes of this suit. Both are Iowa corporations.

Des Moines Hotels is the owner of Holiday Inn North and Iowa Super Hotels owns Holiday Inn South, both in Des Moines. Brock and Linquist are the sole stockholders of plaintiff corporation. The two Iowa corporations paid substantial real-estate taxes on property in the city in excess of $70,000 per year. Plaintiff's predecessor, Linquist Construction Company, became a division of plaintiff in March 1963. Since becoming such division the construction company had paid use taxes, sales taxes and payroll taxes of several kinds. Plaintiff filed a consolidated federal income tax return including Iowa Super Hotels and Des Moines Hotels for the fiscal year ending September 30, 1965.

The trial court found plaintiff's ownership of all stock in the two Iowa corporations paying substantial real-estate taxes in the city at all times pertinent thereto qualified it as a taxpayer for the purpose of this litigation. Plaintiff argues in support of this finding that if it should be determined being a taxpayer is of importance, then in equity the corporate entity should be disregarded to give plaintiff a standing as a Des Moines taxpayer.

To sustain plaintiff's argument we would be required to disregard the separate entity of the three corporations and treat the parent corporation and the subsidiaries as one, for the parent's benefit.

 Generally one who has created a corporate entity will not be permitted to disregard it to gain an advantage, which under it would be lost. Earp v. Schmitz, 334 Ill. App. 382, 79 N.E.2d 637, 639.

 " 'That one * * * corporation may own * * * all the stock of a corporation does not establish a legal [identity] * * *

so as to render acts by one the acts of the other.' 1 Fletcher Cyclopedia Corporations, section 28, page 104. See also section 25, page 90 et seq. [now 1963 Revised Volume 1, pages 124 and 96]." Wescott & Winks Hatcheries v. F. M. Stamper Co., 249 Iowa 30, 36, 37, 85 N.W.2d 603, 607.

In Rexall Drug Co. v. Peterson, 113 Cal. App.2d 528, 530, 248 P.2d 433, 434, the court stated: "Ownership of capital stock in one corporation by another does not itself create identity of corporate interest as between the two." See also Schwob Mfg. Co. v. Huiet, 69 Ga. App. 285, 25 S.E.2d 149, and citations.

"Ownership of capital stock in one corporation by another does not, itself, create an identity of corporate interest between the two companies, nor render the stockholding company the owner of the property of the other, * * *. Nor does the identity of officers of two corporations establish identity of the corporations." Divco-Wayne Sales Financial Corp. v. Martin Vehicle Sales, 45 Ill. App. 2d 192, 195 N.E.2d 287, 289. Quoting from Superior Coal Co. v. Department of Finance, 377 Ill. 282, 289, 36 N.E.2d. 354, 358.

██ A stockholder in a corporation paying taxes is not by that reason a taxpayer. Price v. Flannery, 225 Ky. 186, 7 S.W.2d 1067, 1068.

██ . The mere fact that the shares of stock of corporation became merged in one owner did not destroy the identity of the company as a corporation. Voll v. Zelch, 198 Iowa 1333, 1335, 201 N.W. 33, 34.

The corporate entity has been disregarded where the parent corporation was asserting its independence of its subsidiary to protect the parent from a third party. When the court has held the parent was not independent of its subsidiary it has done so to prevent the parent from perpetrating a fraud or injustice, evading just responsibility or defeating public convenience.

"A corporation is treated as an entity separate from its stockholder or stockholders under all ordinary circumstances. Although courts have made exceptions under some circum-

stances, this has been done where applying the corporate fiction 'would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim * * *.' Those who are responsible for the existence of the corporation are, in those situations, prevented from using its separate existence to accomplish an unconscionable result. In the present case, those who created the corporation in order to enjoy advantages flowing from its existence as a separate entity are asking that such existence be disregarded where it works a disadvantage to them. We do not consider it good policy to do so." Stebane Nash Co. v. Campbellsport Mutual Ins. Co., 27 Wis.2d 112, 121, 122, 133 N.W.2d 737, 743. Quoting from Jonas v. State (1963), 19 Wis.2d 638, 644, 121 N.W.2d 235, 238, 95 A.L.R.2d 880.

In Wescott & Winks Hatcheries v. F. M. Stamper Co., supra, 249 Iowa at 35, 85 N.W.2d at 606, we determined:

"[T]he correct rule to be that the separate corporate existence of the subsidiary may be ignored (at least by equity) in order to circumvent fraud, restraint of trade, creation of monopolistic combination or other violation of law by the parent company or by an individual in control of both corporations." (Citing cases) See also Washington & O. D. U. Assn. v. Washington & Old Dom. R., 208 Va. 120, 155 S.E.2d 322, 326.

In this instance, it is the parent corporation, not innocent or deserving third parties, who ask us to disregard the corporate entity to give it status as a taxpayer for the purpose of pursuing this litigation, if taxpayer status be required. We are not persuaded to do so.

V. Although we agree with defendants' contention urged under this assignment that plaintiff does not have either defendant city or Iowa taxpayer status, this does not completely answer the question. This requires a determination whether, under the circumstances here, such taxpayer status is essential to plaintiff's standing to question the city's procedures in this matter.

Initial funds for the urban renewal program are furnished by the United States for acquisition of sites and operation of the program with an ultimate division of the costs to be paid,

after sale of the parcels of land, two thirds by the Federal Government and one third by the city. Because federal and city funds were involved in the renewal project the court found plaintiff need not be a taxpayer of defendant city to seek relief in state courts.

Plaintiff contends the city violated both procedures required to grant it a fair opportunity to submit a proposal and requirements of Code section 403.8 in failing to make the sale under reasonable competitive bidding procedures. This resulted in the sale to Motor Inn being void.

The trial court found the March 1 modification of the plan eliminating maximum floor area, height and sign restrictions in Parcel T-3 while retaining these restrictions in other districts constituted a major and significant amendment to the plan requiring defendant city to observe the same requirements and procedures by which the plan was originally adopted.

From this finding the court concluded: (1) The city failed to comply with the requirements of Code section 403.8; (2) The procedures used by the city to dispose of Parcel T-3 did not comply with the statutory requirement that the sale be held under reasonable competitive bidding procedure; (3) The fair value of the parcel was affected by the restrictions set forth in the urban renewal plan and zoning ordinance and (4) The city's failure to notify qualified developers that restrictions contained in the plan and ordinance were not to be enforced affected the market value of the parcel and may have prevented greater return to the city and Federal Government upon sale of the property.

From our de novo review we are satisfied there is substantial evidence supporting these conclusions.

Section 403.8(2) provides a municipality may dispose of real property in an urban renewal area to private persons, but "only under such reasonable competitive bidding procedures as it shall prescribe * * * ."

Public policy underlies the requirements of competitive bidding. The purpose of the statute is that each bidder, actual or possible, shall be put upon the same footing. Interested purchasers should be given equal opportunity to

bid on the land bearing the same restrictions. The municipal authorities should not be permitted to waive any substantial variance between the conditions under which the bids are invited and the proposals submitted. If any bidder is relieved from conforming to the conditions which impose some duty upon him, or from strict performance of the terms of the invitation to bid, such bidder is not contracting in fair competition with those bidders who propose to be bound by all conditions. An indispensable element of such sale is the existence of a definite common standard to which all competitive proposals alike relate. A common pattern is the foundation of just competition. Iowa-Nebraska L. & P. Co. v. City of Villisca, 220 Iowa 238, 248, 249, 261 N.W. 423, 429; Tufano v. Borough of Cliffside Park in Bergen County, 110 N.J.L. 370, 165 A. 628, 629, 630; Juice Bar Corp. v. Township Committee, 36 N.J. Super. 164, 115 A.2d 131, 133.

This policy prevents the modification of specifications after bids have been presented, and awarding the contract to one of the bidders based upon such revised specifications.

▮▮▮ The rule is familiar that one cannot take advantage of the opportunity to achieve a contract under invalid conditions and specifications and then, when unsuccessful, seek by the prosecution of a civil action to have the award annulled.

Although plaintiff alleges it is a taxpayer and as such is entitled to pursue this litigation, it does not allege or contend it brings this action as a city or state taxpayer or as a class action in behalf of taxpayers. Plaintiff is not suing as an unsuccessful bidder toward whom the doctrine of estoppel is invoked, but in its individual capacity as one who was precluded from bidding—prevented from participating in the sale.

▮▮▮ Where plaintiff is arbitrarily and unreasonably deprived of its right to bid at a public sale, it has standing to maintain an action to challenge the sale to another bidder as one adversely affected even though it is not a taxpayer.

Plaintiff had been invited to submit proposals on the development of this parcel (T-3). It, along with others, had gone to expense and trouble to do so. It could expect fair treatment and an opportunity to bid with the others, when the

city had decided what restrictions would be acceptable to it and adopted them.

The determination of plaintiff's standing must therefore depend on whether the condition by which it was ·prevented from participating in the sale was proper and valid.

 VI. Under the circumstances here, defendant city's failure to comply with the requirements of section 403.8(2) and its procedures used to dispose of Parcel T-3 resulted in the lack of a definite common standard on which to submit competitive proposals. The advantage of competition was lost. Failure to notify plaintiff and other qualified developers the restrictions were not to be enforced denied plaintiff and such others who might have been interested an equal opportunity to compete in acquiring the parcel by participating in the sale. This fact distinguishes the present case from Boss Hotels Company v. City of Des Moines, 258 Iowa 1372, 141 N.W.2d 541.

The procedures by which plaintiff was precluded from participating are contrary to the statute, improper and void. Plaintiff was arbitrarily and unreasonably deprived of its right to bid and adversely affected thereby. It therefore has standing to maintain this action.

Other propositions have been considered but determined to be without merit.

For these reasons the sale to River Hills is void. The trial court was correct in so holding.—Affirmed.

All JUSTICES concur except LEGRAND, J., who takes no part.