James S. REEDER, Appellant,

v.

IOWA STATE HIGHWAY COMMISSION, Appellee.

No. 53413.

Supreme Court of Iowa.

April 8, 1969.

———◆———

Wm. W. Crissman, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., Robert N. Merrilat, Sp. Asst. Atty. Gen., Ames, and Fisher & Pickens, Cedar Rapids, for appellee.

RAWLINGS, Justice.

From assessment of damages by condemnation commission for the taking of a portion of plaintiff's land, he appealed to the district court. Trial to jury, commenced March 20, 1967, resulted in a $33,000 verdict, and plaintiff takes this appeal.

He here claims trial court erred regarding admission of certain evidence, failure to give a requested instruction, and in the giving of an improper one. We hold plaintiff is not entitled to a reversal.

January 29, 1963, defendant condemned, for highway use, a fractional part of plaintiff owned lots 13, 14 and 15, Twin Towers Addition to Cedar Rapids, including a house on lot 15.

Among exhibits certified to us is a plat, here reproduced to aid in visualizing the area involved. Diagonal lines denote the land taken.

·Plaintiff purchased lot 15 in December 1952, lots 13 and 14 in October 1953. They were not then a part of Cedar Rapids and had no sewer, water or gas facilities, the only ready utility being electricity.

July 19, 1961, these lots were annexed to Cedar Rapids, zoned R–1 residential. However, at time of taking, plaintiff's property was employed by him for travel trailer storage and sales purposes, apparently on what may be best described as a "grandfather" nonconforming use basis.

Most, if not all, surrounding land was devoted to commercial usage.

Following annexation all the aforesaid utility services were made available to plaintiff.

In course of trial plaintiff testified his property, before condemnation, was worth $100,000, and afterward had a value of $40,000. Two witnesses called by him stated the highest and best use of these lots was commercial, and fixed the difference in value before and after condemnation at $47,472 to $53,500.

Defendant's witnesses placed the time of taking before and after variance at $27,400 to $30,000.

I. At the outset, plaintiff argues the residential zoning ordinance in effect January 29, 1963, was invalid.

For two reasons we must decline the invitation to explore that approach.

■ This contention was neither presented to nor passed upon by trial court, so will not be considered on appeal. Jones v. Iowa State Highway Commission, Iowa, 157 N.W.2d 86, 92; In re Adoption of Moriarty, Iowa, 152 N.W.2d 218, 223; Linge v. Iowa State Highway Commission, Iowa, 150 N.W.2d 642, 646; and Boss Hotels Co. v. City of Des Moines, 258 Iowa 1372, 1377, 141 N.W.2d 541.

■ Next, the claim made takes on all the colorations of an unallowable collateral attack on the ordinance. See Linge v. Iowa State Highway Commission, supra, loc. cit., 150 N.W.2d 648, and Annos. 9 A.L.R.3d 291, 303.

II. During trial plaintiff challenged and now disputes admissibility of testimony by defendant relative to enactment of an ordinance rezoning that part of lots 13 and 14, left after condemnation, from residential to commercial. This necessitates a review of the record.

As previously stated, plaintiff presented evidence to the effect the highest and best use of the lots here involved was for commercial purposes. The propriety of this showing is not subject to question. As we said in Mohr v. Iowa State Highway Commission, 255 Iowa 711, 720, 124 N.W. 2d 141, 147: "* * * considerable latitude is allowed in the admission of evidence of the capabilities of land affected by a condemnation and the uses to which it may reasonably be adapted. It is true there must be a present demand for the land for such uses or reasonable expectation of such demand in the near future. *It must be remembered too that such evidence is to be considered only for the effect it has on market value at the time of the taking, not at some future time.*" (Emphasis supplied.) See also Jones v. Iowa State Highway Commission, 259 Iowa 616, 625–626, 144 N.W.2d 277; Crist v. Iowa State Highway Commission, 255 Iowa 615, 621, 123 N.W.2d 424; 29A C.J.S. Eminent Domain § 273(2), p. 1190; 27 Am.Jur.2d, Eminent Domain, section 277, page 66; and Annos. 9 A.L.R.3d 291, 309.

Additionally, plaintiff offered in evidence, and trial court permitted introduction of the subject rezoning ordinance enacted October 14, 1963, or more than eight months after the taking.

Later, plaintiff was called as a witness by defendant and questioned regarding his application for the zoning change, filed two days after °condemnation.

Over repeated objections he was then questioned and gave these answers:

"Q. Did you make any statements or representations as to what you would do in proceeding with this appeal against the Highway Commission if you got the zoning changed—to the City Council? A. Not that I recall.

"Q. Did you ever tell anybody you would settle the appeal and settle the case against the Highway Commission if you got the zoning changed? A. No.

"Q. Did you ever tell anybody over at City Hall the matter had been settled —when you were making your request for zoning change? A. No.

"Q. Did you ever tell anybody you would have to move your shop and leave there if you didn't get the zoning changed? A. I would have to find more room—I don't know if I said I would have to leave—I said I would have to get more area.

"Q. Did you ever tell anybody over at City Hall you would not use the fact Lots 13 and 14 had been changed to commercial to your benefit in attempting to secure larger damages in your appeal of the Highway Commission case? A. No, there was no statement of that kind ever made because I wanted to continue using it as I had used it."

Thereafter John David Oberthien, Sr., Cedar Rapids Director of Public Works at all times here concerned, and Benjamin H. Trickey, one of plaintiff's neighbors, testified on behalf of defendant. These men stated they were present when plaintiff appeared before the City Planning Commission in support of his rezoning application. Their testimony reveals plaintiff there said, on one occasion, the matter of condemnation "could be settled if the rezoning go on," and at another time made a statement to the effect he had settled with the highway commission.

Frank Albert Bosh and Stewart E. Shank, then members of the Cedar Rapids City Council, also appeared as witnesses for defendant. In material part their testimony discloses plaintiff appeared before the council and repeatedly stated, in effect, (1) he needed the rezoning change in order to remain in business, and (2) it would help him effect a settlement with the highway commission, but would not be used to secure increased damages.

Bosh and Shank also stated they voted for the rezoning so plaintiff could stay in business, and to aid him in settling his case with defendant.

The foregoing testimony is challenged upon the premise that reasons or motives of a city council in enactment of an ordinance cannot, as a general rule, be inquired into by the courts.

Plaintiff cites, in support of this position, Gates v. City Council of Bloomfield, 243 Iowa 1, 10–11, 50 N.W.2d 578; Huston v. City of Des Moines, 176 Iowa 455, 477, 156 N.W. 883; Swan v. City of Indianola, 142 Iowa 731, 739–740, 121 N.W. 547. But in each of these cases validity of an ordinance was being challenged. That is not the situation with which we are here confronted.

In the case at bar plaintiff, as aforesaid, introduced evidence relative to the highest and best use of his land, then introduced the rezoning ordinance in an attempt to close the door on that issue. Inferentially he contends enactment of the ordinance, per se, proved best use of lots 13, 14 and 15 was commercial *at time of taking*.

■ Bearing in mind the ordinance was adopted more than eight months after condemnation, the claim made by plaintiff is manifestly lacking in substance.

■ First, enactment of a zoning ordinance subsequent to condemnation does not alone establish either adaptability or non-adaptability of a tract of land for any particular purpose *at time of taking*. And any inferences in that direction, arising

from adoption of a rezoning ordinance, may always be rebutted.

It is to us also apparent the challenged testimony went more to the matter of plaintiff's purpose or objective in seeking enactment of the ordinance, than to motives of the municipal lawmaking body in adopting it.

█ We are satisfied defendant was enentitled to rebut plaintiff's time of taking highest and best use testimony *and* to reveal discrediting inconsistencies on his part. See section 624.1, Code, 1966; State v. Hephner, Iowa, 161 N.W.2d 714, 718–720; Glatstein v. Grund, 243 Iowa 541, 554–555, 51 N.W.2d 162, 36 A.L.R.2d 531; Olson v. Hodges, 236 Iowa 612, 626, 19 N.W.2d 676; 88 C.J.S. Trial § 101, p. 212; 29 Am.Jur.2d Evidence, section 269, page 318, and 43 Iowa L.Rev. 299.

III. At close of all evidence plaintiff submitted a requested instruction and now claims trial court's failure to give it constitutes error. However, the record discloses no exception was timely asserted relative to this matter.

Rule 196, Rules of Civil Procedure, states in material part: "Before argument to the jury begins, the court shall furnish counsel with a preliminary draft of instructions which it expects to give on all controversial issues, which shall not be part of the record. Before reading them to the jury, the court shall submit to counsel its instructions in their final form, noting this fact of record, and granting reasonable time for counsel to make objections after argument to the jury and before the instructions are read to the jury. Within such time, all objections to giving *or failing to give any instruction* must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. *No other grounds or objections shall be asserted thereafter, or considered on appeal.*" (Emphasis supplied.)

And, as was said in Crist v. Iowa State Highway Commission, 255 Iowa 615, 628–629, 123 N.W.2d 424, 432: "We have repeatedly held that this rule means what it says. Exceptions must be taken, both to instructions given and failure to give requested instructions, and the reasons must be specifically stated. Olson v. Truax, 250 Iowa 1040, 1050, 1051, 97 N.W.2d 900, 906, 907; Jurgens v. Davenport, R. I. & N. W. Ry. Co., 249 Iowa 711, 718, 88 N.W.2d 797, 801. Many other cases might be cited to the same effect. The defendant's failure to take proper and specific exceptions leaves nothing for review as to requested instructions or those actually given."

█ Plaintiff has no standing to now effectively assert error by trial court in failing to give his proposed instruction.

IV. In substance the jury was told by instruction 10, if it found a reasonable probability lots 13 and 14 would be changed from residential to commercial within a reasonable time subsequent to January 29, 1963, the date of taking, it was a matter properly to be considered in determining the before and after taking highest and best use value.

Instruction 11, as given, to which plaintiff objected during trial, and here complains, states: "In connection with Instruction No. 10 you are instructed as follows:

"Ordinance No. 58–63 of the City of Cedar Rapids is admitted into evidence as Plaintiff's exhibit 2 in this case. This ordinance which was adopted by the City Council of the City of Cedar Rapids in October, 1963, changed the zoning of Plaintiff's Lots 13 and 14 of Twin Towers Addition from R–1 residential to B–2 Commercial use. Other testimony was received concerning this ordinance.

"Exhibit 2 and the testimony relating thereto must be carefully confined to its only proper role. It may serve only to support the reasonableness of the factual claim that on the date of taking the parties

to a voluntary sale would have recognized and been influenced by the probability of a zoning change in the near future in fixing the selling price. The fact would still remain that on the date of the condemnation, January 29, 1963, Lots 13 and 14 were zoned R–1 residential, and the value as of that date must still be reached on the basis of facts as they then would have appeared to and been evaluated by the mythical buyer and seller."

The first paragraph of this instruction singles out the ordinance rezoning lots 13 and 14 from residential to commercial, and interprets its standing as an element in determining reasonable foreseeability of a probable zoning change.

This is balanced by the last paragraph advising the jury that value *at time of taking* was still the determinative factor.

 On that subject we held in Belle v. Iowa State Highway Commission, 256 Iowa 43, 50–51, 126 N.W.2d 311, jury instructions should not unduly emphasize any theory or phase of a case, and mention of testimony favorable to one party necessitates mention of that which is unfavorable.

The classification of plaintiff's land at time of taking is not subject to question. It was then zoned residential. And as we held in Mohr v. Iowa State Highway Commission, quoted supra, loc. cit., 255 Iowa 720, 124 N.W.2d 141, evidence as to uses to which land may reasonably be adapted is to be considered only for the effect it has on market value at time of taking, not at some later date.

Furthermore, this court has consistently adhered to the rule the measure of damages for a partial taking is the difference in actual, or fair market value of the property immediately before and after condemnation. See Jones v. Iowa State Highway Commission, 259 Iowa 616, 621–622, 144 N.W.2d 277, and Nedrow v. Michigan-Wisconsin Pipe Line Co., 245 Iowa 763, 768–769, 61 N.W.2d 687.

Although the challenged instruction might be better phrased by some scholars of the law, it is still substantially correct.

The jury was properly told, each instruction given should be construed in the light of and harmoniously with all others. See Anthes v. Anthes, 258 Iowa 260, 267, 139 N.W.2d 201.

When instruction 11 is viewed in the light of the foregoing it becomes apparent plaintiff's complaint affords no basis for reversal.

Affirmed.

All Justices concur.